E. G. HORNE v. R. K. CHATHAM & Co.

(Case No. 5277.)

1. PATENT — RECORD OF TRANSFER IN PATENT OFFICE.— The failure of a transferee of a patent to have his transfer recorded in the patent office within three months after its execution does not affect the validity of the instrument as to the parties thereto. Such assignment will be void as against any subsequent purchaser for a valuable consideration without notice, unless it is recorded in the patent office within three months from the date thereof.

2. SAME — ASSIGNABILITY OF PATENTS.— Every patent, or any interest therein, is assignable in law by an instrument in writing; and the patentee, his assigns or legal representatives, may grant or convey an exclusive right to use it in the whole or any specified part of the United States.

3. Parol evidence admissible.— In a transfer the following clause occurred: "I sell, assign and transfer unto the Carver Gin and Machine Co. all the right, title and interest whatsoever which I have in and to the said invention," etc.  *Held*, that, as the interest intended to be conveyed was not specified in the writing, parol evidence would be admissible to prove its extent.

4. Same — Representations.— Though the vendor represented to the company that he owned the entire patent, such representation would not have the effect of enlarging the terms of his conveyance and passing an interest of which he had previously divested himself.

5. Instruments of like date referring to the same subject-matter.— Several instruments bearing the same date, referring to and seeming to be based upon each other, and defining and adjusting the rights of several parties to the same subject-matter, are presumed to constitute a general settlement, and, in the absence of fraud, conclude a party from going behind this settlement and asserting a claim not advanced when such instruments were executed.

Appeal from Brazos.    Tried below before the Hon. W. E. Collard.

On the 18th of March, 1881, Horne transferred to Chatham & Co. the right to a patent issued to him for improvement in cotton gins, for the state of Texas, except the northeast corner, east of the H. & T. C. R. R., and north of the Texas & Pacific.    Part of the consideration was a royalty of twenty-five cents per saw for all gins sold under this contract.    This suit was brought to recover royalty so due.    The questions arose on a plea in reconvention in which Chatham & Co. alleged that on the 4th of September, 1881, Horne made a second transfer to them of one-half the patent for all the United States not covered by the former transfer, and that on the 19th of December, 1881, Horne sold to the Carver Gin and Machine Co. the entire patent, except for the territory conveyed by the sale of March 18th above, for the sum of $5,000, and a royalty of ten cents per saw for all gins sold under that contract, and without notice to the Carver Gin and Machine Co. of the sale to Chatham & Co. of September 4th.    After their claim for damages was stricken out on exception, Chatham & Co. claimed one-half the proceeds of the sale by Horne to the Carver Gin and Machine Co.

Trial with verdict and judgment against Horne for $2,232.50, and one-half of the royalty received and to be received by Horne from the Carver Gin and Machine Co.    The points relied upon for reversal are sufficiently indicated in the opinion.

*J. D. Thomas*, for appellant, cited, on capacity to transfer patent-rights: U. S. R. S., sec. 4898; Gayler *v.* Wilder, 10 How., 494–6; Blanchard *v.* Eldridge, 1 Wall., 337; Pitts *v.* Jameson, 15 Barb., 315.

On the construction to be put upon the several instruments: Moody & Jemison *v.* Paschal *et al.*, MS., Tyler Term, 1883; Wallis *v.* Beau-

champ, 15 Tex., 305; Sanger v. Wood, 3 Johns. Ch., 421; Morris v. Rexford, 18 N. Y., 556; Bank of Beloit v. Beal, 34 N. Y., 476; Butler v. Miller, 11 N. Y., 504; Herm. Est., pp. 461–466; Story, Eq., 1075, 1097; Allen v. Brown, 44 N. Y., 228; Oneida Bank v. Ontario Bank, 21 N. Y., 497–8; Berly v. Taylor, 5 Hill, 586.

*Ford & Taliaferro*, for appellees, cited, on construction of instruments: Howards v. Davis, 6 Tex., 174; Craig v. Wells, 11 N. Y., 375; Mann v. Whitbeck, 17 Barb., 388.

On the amount of interest conveyed by Horne to the Carver Gin and Machine Co., they cited: Taylor v. Harrison, 47 Tex., 461; Harrison v. Boring, 44 Tex., 262–3; Pavement Co. v. Jenkins, 14 Wall., 456; Taylor v. McNutt, 58 Tex., 73.

WATTS, J. COM. APP.— By the terms of the contract between Horne and Chatham & Co., dated March 18, 1881, the exclusive right to the monopoly in that part of the state of Texas therein described is assigned to the latter. The interest assigned is not, as claimed, a mere license revocable at the will of Horne, but it is the exclusive right under the letters patent, within the territory described in the contract. Gayler v. Wilder, 10 How., 494; Pitts v. Jameson, 15 Barb., 315. The failure of Chatham & Co. to have that instrument recorded in the patent office within three months from its execution did not affect the validity of the instrument as to the parties thereto.

In the Revised Statutes of the United States, section 4898, it is provided that "every patent, or any interest therein, shall be assignable in law, by an instrument in writing; and the patentee or his assigns or legal representatives may, in like manner, grant and convey an exclusive right under his patent to the whole or any specified part of the United States. An assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the patent office within three months from the date thereof." From these conclusions it results that appellant's first assignment of error is not well taken.

Several of the assignments of error taken together present the question as to what interest in the monopoly was assigned to the Carver Gin and Machine Company, by the transfer of Horne, dated December 19, 1881. Appellant claims that by his transfer he only assigned his interest in the monopoly, while appellees claim that he thereby assigned to the Carver Gin and Machine Company the entire interest in the letters patent, excepting that portion of the

state of Texas described in his transfer to appellees dated March 18, 1881. And that this included the half interest assigned by Horne in his transfer to them of date September 4, 1881. This becomes a practical question in the case, in view of the fact that appellees claim that the Carver Gin and Machine Company was an innocent purchaser for value, and without any knowledge of their right to a half interest in the monopoly.

According to the terms of the transfer from Horne to the Carver Gin and Machine Company, the former assigned to the latter his interest in the monopoly in all the territory of the United States, except that portion of the state of Texas described in his transfer to appellees of date March 18, 1881. It is recited therein that "Whereas, I am now desirous of disposing of my interest in said patent, and all rights under the same, etc., etc. And, whereas, the Carver Gin and Machine Company, of the city of Memphis, etc., etc., is desirous of acquiring an interest in the same: Now, therefore, to all whom it may concern, be it known, that for and in consideration, etc., etc. (included in which is a royalty of ten cents per saw for all gins sold), I, the said E. G. Horne, have sold, assigned, transferred and set over unto the said Carver Gin and Machine Company, all the right, title and interest whatsoever which I have in and to the said invention or improvement, as secured to me by said letters patent, for, to and in the above named territory, in accordance with above agreement, same to be held and enjoyed by the said Carver Gin and Machine Company," etc.

As Horne by that transfer assigned only his interest in the patent, and as that interest was not defined or specified in the writing, parol and other evidence would be admissible to determine the extent of that interest. And it is shown that prior to the execution of this transfer, Horne had assigned to appellees an undivided one-half interest in the patent. But it is claimed that as the transfer to appellees had not been recorded in the patent office, and that as more than three months had expired at the time the transfer was executed to the Carver Gin and Machine Company, that therefore the transfer to appellees was, as to the Carver Gin and Machine Company, void, as it was a purchaser for value and without notice.

Patent-rights are classed as a species of incorporeal personal chattels. Schouler's Personal Property, vol. 1, p. 89. Ordinarily the good faith of a purchaser cannot invest him with the title to personal property, if his vendor had no title to the property. Dodd v. Arnold, 28 Tex., 100; City National Bank v. Tufts, not published. But as we have seen, unless the transfer of a patent-right or an interest therein has been recorded in the patent office within three months

from its execution, that it is void as against a subsequent purchaser or mortgagee for value and without notice. Now assuming that to the extent of the interest purchased by the Carver Gin and Machine Company, it was a purchaser for value and without notice; and that any previous transfer that Horne might have made of that particular interest, which had not been recorded as required, would, as to that company, be invalid, still that does not determine the question under consideration; for in recurring to the transfer from Horne to the company, it clearly appears that it was not the patent-right, but only the interest that Horne then had in it, which was assigned to the company. Horne's previous transfer to appellees of an undivided half interest in the patent-right, though not recorded, was valid as to the parties to it. In other words, by that transfer Horne had divested himself of that undivided interest. And when he conveyed to the company, his interest was limited to an undivided half. But it is claimed that Horne represented to the company that he owned the entire interest. Suppose that he did; while such representation might constitute a fraud upon the company, for which it might maintain an action against him, still it is not believed that such representation would have the effect of enlarging the terms of his conveyance, so as to pass an interest of which he had previously divested himself.

On the 21st day of July, 1882, the Carver Gin and Machine Company, Chatham & Co. and Horne, entered into a written agreement in substance, that, by assignment of even date, Chatham & Co. were put into the possession of the patent-right for the state of Texas exclusively, and the Carver Gin and Machine Company to the exclusive right in the balance of the territory of the United States. Horne was also to expend $1,000 in perfecting the patent and purchasing other competing patents. Upon the same day Chatham & Co. transferred by quitclaim or release to the Carver Gin and Machine Company their interest in the patent to all the territory in the United States, except the state of Texas. On the same day the Carver Gin and Machine Company, for the expressed consideration of $1, assigned to Chatham & Co. all interest in the northeast portion of the state of Texas; which Horne consented to and approved. Also, at the same time, an agreement was made by and between Horne and Chatham & Co., by which, in consideration of an agreement of even date, the royalty to be paid to Horne by Chatham & Co. for all gins sold in the state of Texas after January 1, 1883, was fixed at eighteen and three-fourths cents per saw.

In their answer appellees claimed of Horne one-half the proceeds received and to be received by him from the Carver Gin and Ma-

chine Company by reason of the transfer of December 19, 1881. This claim is based upon the assumption that Horne's transfer to that company vested the entire interest in the company to the patent, including the half interest of Chatham & Co. Horne in reply to that claim, amongst other defenses, set up the four several instruments dated July 21, 1882, mentioned above, claiming that they were executed at one and the same time, related to the same subject-matter and constituted parts and parcels of one and the same general transaction, and ought to be taken and construed together as one contract; and that by reason thereof constituted a settlement and concluded the asserted claim. Also that Chatham & Co. were thereby estopped from asserting that claim. Appellees answered that, while their instruments were executed at the same time, each was independent of and had no connection with the other. Upon that issue evidence was admitted, and charges given and refused.

From an examination of the terms of these several instruments, which refer to and seem to be based upon each other, they appear to be parts of one general transaction, in which the rights of the several parties in the subject-matter were defined and adjusted. There is no mention in any of these instruments of any such claim as that asserted by appellees in their answer. Nor does it appear that any claim of that character, at the time these instruments were executed, was asserted by appellees against Horne. Now without undertaking to further construe these several instruments, it seems to us that if Horne entered into and consented to the same, understanding and believing that it was a settlement between the several parties of all matters of difference relative to the subject-matter, and that he was induced by such understanding and belief to join in and consent to the execution of the instruments, then this claim could not be successfully asserted against him. In other terms, in the absence of fraud Chatham & Co. would not, under such circumstances, be permitted to go behind the settlement. But on the contrary, if Horne did not understand this as a settlement of the matter, assuming that he did wrongfully assign to the Carver Gin and Machine Company the undivided half interest previously assigned to Chatham & Co., then the latter would not be estopped from asserting the claim.

Our conclusion is that the judgment ought to be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion adopted April 14, 1885.]