### Noyes & Fish and Shapera & Co. v. Sanger Bros. and Kellum & Rotan.

#### No. 974.

1.    **Fraudulent Assignment.**—When an assignee of an insolvent debtor has power under the assignment to prefer creditors, or to change preferences made in the instrument, or to compromise the debts of the insolvent, or when the instrument does not declare the uses for which the property was assigned, the assignment is fraudulent, and therefore void.

2.    **Sale by Debtor to Pay Debts.**—An absolute sale by an insolvent debtor to a creditor of property not in value more than the debt for which the property is given in payment to the creditor, is lawful and valid.

3.    **Subsequent Transactions.**—A mere gratuitous undertaking on the part of the purchasing creditor touching other creditors will not affect the validity of a lawful transaction already and fully consummated.    See example.

Appeal from McLennan.    Tried below before Hon. L. W. Goodrich.

*S. L. Samuels* and *Clark, Dyer & Bolinger,* for appellants.—1.    The two writings being contemporaneously executed, with reference to the same subject matter, between the same parties, and one being a consideration for the other, constituted one instrument.    Wallis v. Beauchamp, 15 Texas, 307; Bank v. Davis, 78 Texas, 366, 367.

2.    That some short time may have elapsed between the execution of the two instruments, or that the bill of sale may at first have evidenced

a complete contract, would not detract from the force of the preceding proposition, in view of the facts that the provisions of the bill of sale had not been fully consummated, and that the second agreement purports to be made in consideration of the sale. Coddington v. Davis, 1 N. Y., 186; Horne v. Chatham, 64 Texas, 41; Marsh v. Dodge, 66 N. Y., 538; Wallis v. Beauchamp, 15 Texas, 307; Bank v. Davis, 78 Texas, 366.

3. The two instruments, being the one a conveyance of property, and the other a promise by the grantees in consideration thereof to pay off or settle with the Waco creditors, constituted a trust in favor of such creditors imposed upon the property, with the grantees as trustees. Wallis v. Beauchamp, 15 Texas, 305, 306; Montgomery v. Culton, 18 Texas, 747, 748; Moody v. Paschal, 60 Texas, 483.

4. The trust evidenced by said instruments was fraudulent and void, because it was made by insolvent debtors, and authorized the trustees to coerce compromises with and releases from the Waco creditors.

As to compromises in trust instruments: Caton v. Mosely, 25 Texas, 379; 2 Bige. on Fraud, pp. 283, 315; Wait on Fraud. Con., sec. 336; McConnell v. Sherwood, 84 N. Y., 528-531.

As to releases in trust instruments: Carlton v. Baldwin, 22 Texas, 732; Bayne v. Denny, 4 W. & W. C. C., sec. 808; Widgery v. Haskell, 5 Mass., 152; 2 Bige. on Fraud, 280-284, 288, 289.

*L. C. Alexander*, for appellees.—1. A creditor has the right to purchase and receive from a failing debtor property enough to satisfy his debt, and the fact that the creditor at the same time assumes the payment of other bona fide debts of the debtor and receives property enough to satisfy the same, does not invalidate the sale, notwithstanding the transaction may delay and hinder other creditors not provided for. Ellis v. Valentine, 65 Texas, 532; Elser v. Graber, 69 Texas, 225; Sweeney v. Conley, 71 Texas, 544; Saddle and Harness Co. v. Schoelkopf & Co., 71 Texas, 418; Davis v. Beason, 77 Texas, 606.

2. The sole issue being one of fact, i. e., the good faith and fairness of the sale to appellees, and this fact having been found in favor of the validity of said sale upon sufficient evidence, the judgment is conclusive of the rights of the parties, and will not be disturbed on appeal, even though there be evidence which would warrant another and different conclusion. Wells v. Yarbrough, 84 Texas, 660; Punchard v. Delk, 77 Texas, 107; Jackson v. Harby, 70 Texas, 416; Hardin v. Abby, 57 Texas, 586; Douglass v. Duncan, 66 Texas, 123.

3. The two instruments, if taken and construed together, can not have the effect to change the character of the transaction from an absolute sale and transfer to that of a partial assignment involving a secret trust; because, as shown by the terms of the same as well as by the oral testimony, appellees cancelled and surrendered their claims, released the land by which same was secured, assumed the payment of other bona fide debts, and there was no condition of defeasance

either expressed or implied, nor was there secrecy in the transaction. Saddle and Harness Co. v. Schoelkopf & Co., 71 Texas, 418; Alstin v. Cundiff, 52 Texas, 460; Miller v. Yturria, 69 Texas, 554; Hubby v. Harris, 68 Texas, 95.

COLLARD, ASSOCIATE JUSTICE.—The appeal in this case is from a trial of the rights of property. November 9, 1888, Noyes & Fish sued the firm of Kimmel & Johnson, in Hill County, on a debt of $1099.70, attached the goods in controversy, obtained judgment for their debt, and foreclosed their attachment lien. November 12, 1888, J. Shapera & Co. sued Kimmel & Johnson, in McLennan County, for $241.89, and attached the same goods, subject to the attachment of Noyes & Fish. Appellees claimed the property levied on by filing affidavit and claimants' bonds, and obtained possession of the goods. By consent, the venue of the case of Noyes & Fish against the claimants was changed to McLennan County. Issues were joined by the parties as in one suit, which were tried by the court without a jury, and resulted in a judgment for the claimants, from which plaintiffs have appealed.

The court below filed no conclusions of fact and law. We find the facts as follows: Appellees owned and held debts against Kimmel & Johnson, a firm of merchants who were doing business in Mt. Calm, Hill County, the claims of both parties defendant amounting to $5278. October 25, 1888, Sam Sanger, one of the firm of Sanger Bros., representing his firm, and Mr. Ed. Rotan, representing his firm in their debt of $1099.70 (most of the indebtedness being past due), went together to Mt. Calm to collect their debts or have them secured. They met Mr. Johnson at the store and went with him to the house of his partner, Mr. Kimmel, a mile distant. Appellees (defendants below) demanded payment of their debts, but Kimmel & Johnson were unable to pay. They agreed to transfer to defendants all their firm property and other property, as shown by the following bill of sale:

"In consideration of a release to J. S. Kimmel of a certain deed of trust on twenty-eight acres of land near Mt. Calm, Texas, in favor of T. P. Barry, trustee, given on the 11th November, 1887, to secure certain indebtedness to Sanger Bros. and Kellum & Rotan, and in further consideration of the satisfaction of all claims now due by us to said Sanger Bros. and Kellum & Rotan, amounting to $5278.28, and the further assumption by Sanger Bros. and Kellum & Rotan of certain local debts due by firm of Kimmel & Johnson, to wit: E. J. Billington, $400; J. W. Graves, $500; Mrs. Dodge, $250; Onslott and West, $60; total $1210, said last named debts to be paid out of the early collections from the late assets of the firm of Kimmel & Johnson. we, the undersigned, have this day bargained and sold, and by these presents do bargain and sell and convey, unto Sanger Bros. and Kellum & Rotan, of Waco, Texas, all the goods, wares, merchandise, furniture, and fixtures now in the storehouse now occupied by us in the town of Mt.

Calm, Texas, said stock consisting chiefly of dry goods, groceries, boots and shoes, hardware, hats, caps, etc., etc., and such other articles as may be found there, and not herein enumerated, together with four bales of cotton of average weight, now at or near said storehouse, one small bay horse about 14 hands high, one chestnut sorrel horse about 15½ hands high, and all the notes, book accounts, choses in action, and evidences of indebtedness of any sort whatever now due the firm of Kimmel & Johnson. And it is further agreed and understood, that a deed in fee simple is to be made by J. S. Kimmel to said Sanger Bros. and Kellum & Rotan of his title to the storehouse and lot on which it stands, now occupied and used by Kimmel & Johnson, being the same described in the above mentioned trust deed to T. P. Barry. It is agreed further, that the release to said twenty-eight acres of land and the surrender of the notes described in above mentioned trust deed are to be made and accomplished immediately upon the execution and delivery of a satisfactory deed to said above described storehouse and lot.''

This instrument was signed by Kimmel and Johnson separately and was delivered to the assignees, to whom also the key to the storehouse was delivered; but there was no other actual delivery of the property, nor had the deed by J. S. Kimmel to the storehouse been executed. Rotan had the bill of sale, and he and Sanger were in their buggy about leaving for the store, when Mr. Johnson asked them back in the house to sign a second paper. They went back, Rotan wrote out, and both for their firms signed the second instrument, which is as follows:

''In consideration of the sale made to us to-day by Kimmel & Johnson of their stock of goods in the town of Mt. Calm, Texas, and the notes, accounts, horses, furniture, and cotton on hand, we agree to undertake to effect a settlement of the claims now held in Waco, against Kimmel & Johnson, to wit: Tripis & Kemando, $74.19; Eaton, Guinan & Co., $200; Moore Bros., $253; Horsful & Cameron, $20; Cameron, Castles & Story, $80; Hill Bros., $20; C. N. Curtis, $20; Waco Woolen Mills, $140; J. Shapera & Co., about $200; total, $1007.19. We are to use our best endeavors to adjust these claims upon a basis that will be satisfactory to each, but do not guarantee entire payment of any one of them. The object of this agreement being to amicably adjust Waco accounts so as to avoid further annoyance to Kimmel & Johnson, if possible.''

Johnson testified, that the second instrument was executed pursuant to an understanding verbally agreed upon when the sale was made of the property, and that the two papers expressed exactly the oral agreement made by all the parties before the assignment was made. Kimmel desired to have the second paper to exhibit to the Waco creditors what had been agreed upon as to their debts. The debts of Kimmel & Johnson mentioned in the first paper—the assignment—were due to their creditors at Mt. Calm; those mentioned in the second paper were

due to their Waco creditors; besides these, Kimmel & Johnson owed many other debts, to foreign creditors, about $2580. They were insolvent.

Rotan and Sanger testified, that the first instrument contained all the contract orally agreed upon; that the agreement was as embodied in the bill of sale—defendants to take the property for their debts, and to pay the Mt. Calm creditors.

Rotan testified, that there was no agreement that his and Sanger's firms should pay the Waco creditors; that the agreement made was embodied in the bill of sale, and was delivered to himself for his firm and Sanger Bros. "After a short interval of irrelevant conversation, we (Sanger and Rotan) started to leave to take possession of the goods and property. The key of the store was delivered to us. After we reached the buggy on our return for this purpose, Mr. Johnson came to the buggy and said that he would like to have some kind of writing to show to the Waco creditors, so that they could not annoy him, and we thereupon returned, and I wrote the other document that is in evidence in reference to a settlement of the claims in Waco. It was no part of the understanding or agreement which was consummated by the execution and delivery of the bill of sale that we would become liable to the Waco creditors for anything, and we had refused to do so when it was talked of. The matter of paying the Waco creditors in whole or in part was fully discussed before the original bill of sale was made, and we (Sanger and Rotan) were alike positive and emphatic in our refusal to enter into such an agreement. This condition was finally waived by Kimmel & Johnson, and Mr. Johnson, in following us to the gate on our first start, asked for something from us in writing which he could exhibit to his Waco creditors to save himself from personal annoyance, saying that the brunt of all their solicitation would fall on him. The purpose of this second paper was to enable Johnson to exhibit to the Waco creditors and to assure him and them of our co-operation in giving them any assistance we could in the way of making statements or negotiating a settlement. We did not agree at any time to pay any money to the Waco creditors. Johnson stated at the time, that at some future time he might sell his homestead and settle with his creditors, and desired my assistance in that event." His testimony estimated the value of the property transferred, the goods in the store at 50 cents on the dollar, or $1700; the notes and accounts at 50 cents on the dollar, or about $3350; the storehouse and lot, $1000; cotton, $75; a total of $6275.

Sanger's testimony estimated the value of the property, stock, and fixtures, inventoried at $3384.91, at 52 cents on the dollar, or $1760; the accounts, inventoried at $6683.17, at 30 cents on the dollar, or $2004.95; the house and lot at $750; the cotton at $150, and the horses at $75; a total value of about $4740. Sanger Bros. after the sale settled the Cameron debt, mentioned in the second instrument as $80, at 50 cents on the dollar, paying $40 in satisfaction. They also settled

with Eaton, Guinan & Co. for $200 in this way; that company owed Sanger Bros. $300, and became insolvent; it was agreed that each claim should satisfy the other.

It is not shown by the testimony whether the defendants paid any of the Mt. Calm debts.

*Opinion.*—Appellants contend that the two instruments should be construed together, and, being so construed as one contract, that they evidence a fraudulent transaction, because they confer on the vendees the power to coerce the Waco creditors of Kimmel & Johnson to accept for their claims less than the full amount due or to compromise, thus placing the Waco creditors in the power of the vendees.

We think it is the law, that when an assignee of an insolvent debtor has power under the assignment to prefer creditors, or to change preferences made by the instrument, or to compromise the debts of the insolvent, or when the instrument does not declare the uses for which the property was assigned, the assignment is fraudulent, and therefore void. Caton v. Moseley, 25 Texas, 375; Horne v. Chatham, 64 Texas, 36; McConnell v. Sherwood, 84 N. Y., 522; Grover v. Wakeman, 11 Wend., 203; Burrill on Assign., pp. 235, 236; 2 Bige. on Frauds, pp. 313–316.

The assignment must specify and fix the rights of the creditors thereunder, and not leave it to the assignee. The assignor could not reserve such a right to himself, or confer it upon his assignee. An assignment which places any of the creditors in the power of the assignee to settle with according to his discretion necessarily has the effect to hinder and delay them in the collection of their debts. The property of the debtor is thus placed in the hands of a trustee and protected under the terms of the trust from legal process, without giving the debtor certain and definite rights against the trustee.

But this doctrine does not apply to the facts of this case. The transfer of the goods in this case is not an assignment under the statute, and is not void because it prefers creditors. Stiles v. Hill, 62 Texas, 429; 65 Texas, 318; 65 Texas, 714; 67 Texas, 103. It is an absolute sale. The evidence supports the conclusion that defendants did not take more of the goods than was sufficient to pay their debts; besides, they unqualifiedly undertook to pay the debts due to the Mt. Calm creditors, and if they have not paid them they can be compelled to do so. An insolvent debtor may under the law, often declared in this State, prefer his creditors, pay some, or provide for the payment of some to the exclusion of others, provided he does not overpay them, and it is the undoubted right of the creditor to have his debt paid, provided he does not take more of the property of the insolvent than is sufficient to pay his debt and the debts he may assume to pay. Such an application of the property of the debtor is not a transfer to defraud creditors, but to pay them, which is entirely legitimate. It may result in delaying other creditors or in defeating the collection of their debts;

but such a result could not deprive the debtor of the right to prefer his creditors, or the creditor from collecting his debt.

The evidence in this case would justify the conclusion that the sale of the goods to defendants was a distinct transaction from that concerning the Waco creditors, and that the latter was a mere gratuity; that the sale of the goods to pay debts in amount more than equal to the value of the property sold was consummated and concluded before the second instrument was signed or agreed to. If this is true, and the conclusion be necessary to the decision of the court below, it must be held that the court's judgment was based upon it, there being no findings of fact and law of the court. From this view of the case, we think the judgment must be affirmed, whatever may be the effect of the second instrument if construed with the bill of sale as one contract.

The judgment of the court below is affirmed.

*Affirmed.*

Delivered October 31, 1894.