# FIRST DISTRICT, 1897.

### JOHNCE HENRY v. DAVIS McCARDELL.

#### Delivered March 4, 1897.

**1.  Written Contract—Contemporaneous Parol Agreement.**

See the opinion for allegations in an answer to an action on a promissory note held not to be subject to the objection that they sought to vary the terms of the contract evidenced by the note.

**2.  Negotiable Instruments—Conditions for Credit Not Met.**

Under an agreement that notes given for a stock of goods taken at an estimated value should be credited with the difference between such estimated value and the real value as shown by an inventory thereafter to be taken, the maker of the notes is not entitled to a credit when no such inventory was taken and the payee was not at fault.

**3.  Pleading—Sufficiency.**

An answer alleging that plaintiff had agreed to enter into a partnership with defendant during the "coming season of 1892," and that defendant had repeatedly demanded of plaintiff during that season that he comply with his contract, but that he had refused, is sufficient, in the absence of special exception for uncertainty of time.

**4.  Contract—Apparently Inconsistent Understanding.**

An absolute and unconditional promise by the payee of two notes that he will contribute one of them to a contemplated partnership with the maker is binding, though the parties at the time of the execution of the notes understood that they were to be pledged to the creditors of the payee, and they were in fact so pledged.

**5.  Contract—Breach—Remedy.**

Defendant bought of plaintiff a stock of goods, and plaintiff promised to secure him credit and to thereafter become a partner in the business. He failed to perform his agreement, and on account of such failure defendant became insolvent. Held, that he was entitled to damages against the plaintiff.

APPEAL from Polk.    Tried below before Hon. L. B. HIGHTOWER.

*Hill & Hill*, for appellant.

*Holshousen & Feagin*, for appellee.

WILLIAMS, ASSOCIATE JUSTICE.—Appellee sued appellant upon a promissory note, and recovered the judgment from which this appeal is taken.    The questions are raised upon the ruling of the court sustaining exceptions to the answer.

The answer alleged that, prior to the giving of the note, plaintiff was a merchant, owning a stock of goods and carrying on business; that he had previously often offered to sell his stock to defendant on credit, and, at the date the note sued on was executed, renewed his offer; that defendant, being poor and having no means and no credit or commercial

rating, for that reason, stated to plaintiff, declined to buy; that plaintiff, in order to make the trade, proposed to defendant that, if he would buy the stock on credit, plaintiff would assure and secure a line of credit among merchants and wholesale dealers in the aggregate sum of $2500 in excess of the stock; that he further proposed that defendant buy the stock on credit for $1820, to be arrived at as stated below, and give his two notes for $910 each, payable at different times; and that plaintiff further proposed that later on, "during the coming season of 1892," he would enter into said business as an equal partner, in consideration of one of the notes to be given by defendant, which plaintiff would deliver up to defendant; that plaintiff proposed, as he was needing securities to be deposited with his creditors then pressing him, and as there was no time then to take an inventory of the goods, that the value of the goods be ascertained from an inventory theretofore taken, which should be used as a basis to close up the trade, deducting 33⅓ per cent thereof, and for the sum thus ascertained the notes be given; but plaintiff agreed that another inventory should be afterwards taken, and if the value of the goods should be found to be less than $1820, the difference should be credited on the notes; that, placing confidence in plaintiff's promises and propositions, defendant accepted plaintiff's terms of sale, along with his propositions, and executed the notes one of which is sued on, and entered upon the business of merchant under said contract; that he often demanded of plaintiff that he furnish defendant the promised line of credit, and subsequently often demanded during said season of 1892, that plaintiff come into partnership and deliver up the note as he had promised, all of which plaintiff refused to do, and refused to carry out his contract, and that defendant soon found that he had no credit; that, because of the refusal of plaintiff to comply with his agreement, the business proved a failure, and defendant was compelled, in October, 1892, to go out of business and make an assignment; that the inventory agreed to be taken subsequently was never taken; that the one from which the value of the goods was ascertained had been taken to enable plaintiff to make a showing to his creditors, and put a fictitious and excessive valuation upon the stock, which was in fact worth only $1200; that, soon after the notes were given, plaintiff endorsed them to his creditors as security; that, at the time of the trade, defendant was an employe of plaintiff; that he put into the business $225, besides giving his notes for the stock; that his services during the time he carried on the business were worth $1000, and that all of this, as well as the amount of the note sued on, was lost; that, through plaintiff's refusal to comply with his agreement, soon after the trade was made plaintiff's property was attached by his creditors; that plaintiff was an old merchant, having been in business a number of years, and understood the business and was well known among wholesale merchants as such; that by plaintiff's failure to comply with his agreement defendant lost, in profits which would have been made, $1000.

There are some other allegations in the answer, which we do not deem it necessary to state. The answer was framed both as a plea of failure of consideration and a plea in reconvention, and was verified by affidavit.

The exceptions which were sustained were, in substance, (1) that the part of the answer above stated showed no defense; and (2) that the damages claimed for value of the defendant's services and time lost, and for the profits which would have been made, and for the loss of business, were unliquidated, vague, indefinite and uncertain.

We do not think the defense set up in the answer is subject to the objection that it seeks to vary by parol the terms of the note sued on. It is simply a case in which the entire contract is not expressed in the notes. As a part of a contract may be in writing and other parts may be oral, it is always competent, when such is the case, where the oral stipulations are not such as the law requires to be written, to show by parol those which were made orally, provided that, in so doing, the part which has been put in writing is not altered or varied. Thomas v. Hammond, 47 Texas, 42.

The part of the answer which approaches nearest to an attempt to vary or contradict the note is that in which is alleged the contemporaneous agreement that the whole of the amount for which the notes were given was not to be paid, if it should subsequently be found, by the agreed method, that the goods were not worth so much. As we do not think the allegations are sufficient to show a right to an abatement under that agreement, it is immaterial to inquire whether or not it could be shown by parol. It is alleged that the subsequent inventory was never taken, and it is not shown that this was through any default of plaintiff. It is not averred that plaintiff was ever asked to join in the making of an inventory, or that defendant himself ever took one. It is stated, as an isolated fact, that plaintiff, "soon after" the notes were given, indorsed them to his creditors; but it does not follow that the taking of the inventory and accruing of the consequent benefit to the defendant were prevented by that act. As plaintiff only agreed to a reduction if the value of the goods should be ascertained in this way to be less than the amount for which the notes were given, and as this was not done, no abatement of the amount can be claimed on this ground.

The other agreements made by plaintiff are consistent with the notes. If a defense is shown under those promises it does not arise out of facts which vary the notes, but out of the breach of contemporaneous promises, consistent with the notes, which breach occurred subsequent to the giving of the notes. There can be no doubt that the promises made and accepted under the circumstances stated constituted a valid contract, binding upon plaintiff as well as upon defendant.

We have had some doubts as to whether a breach of the contract to form the partnership is sufficiently alleged. The time fixed for its formation is quite vaguely expressed. If the "coming season of 1892" meant the whole year, or the autumn of 1892, it would be difficult to

hold that a breach of the agreement appears. In the first instance, plaintiff would have had the whole of the year, and, in the second, the whole of the autumn, to enter into the partnership; and, as the business ceased in October, 1892, the time allowed him had not expired. But, as the contract was made in the winter, the language, in the absence of anything to explain its meaning, would naturally mean the coming spring season. The plea alleges that repeated demands during the season referred to had been made upon the plaintiff to comply with his promise, and that he had refused; and there are general allegations to the effect that this refusal was a violation of his agreement. As there was no special exception to the plea for its uncertainty in this particular, we have concluded that it is sufficient on general demurrer.

Other facts stated suggest doubt as to whether there was a breach of the contract as the parties intended it. It was averred that plaintiff stipulated for the notes at once, in order that he might place them with his creditors, as security for his debts, and that he did so place them soon after their execution. It is not averred that it was in his power, when demand was made upon him, or at any time before the cessation of the business, to perform his agreement by contributing one of the notes as his part of the capital. The question presents itself, whether the parties, when they made the contract, understanding that the notes were to be so used, did not contemplate that the notes might be beyond plaintiff's reach when he should be called upon to enter the partnership, and that, in that event, he would not be expected to do so. But his promise, as alleged, was absolute and unconditional, and should, in the absence of anything else, be held to mean that he should put himself in a position to comply with it, either by regaining control of one of the notes or supplying its place.

As a valid contract and its breach are alleged, it cannot be admitted that the defendant has no remedy. The contract is of that indefinite character which gives rise to great difficulty in determining the just measure of redress for its breach, but we think it may be safely said that no authority entitled to be followed would warrant a court in denying any redress whatever when properly claimed. The plaintiff, if the answer states the truth, induced defendant to buy the stock, giving his notes for it, and to enter upon the business, by promising that plaintiff would give credit, and would support the business by becoming a partner. This implied that he would give the aid of his services, his standing, and his credit, and would share the risks of the enterprise. The defendant, executing his agreement, undertook to carry on the business, involved himself in the resulting liabilities, and, by his failure, lost all of his investment. He alleges that this was caused by plaintiff's violation of his promises.

If this is true, with what justice can it be claimed that the defendant should bear all of the loss? If it is true the enterprise was intended for plaintiff's as much as for defendant's benefit. We must assume it to be true as it is alleged, unless we can see that it is a fact not susceptible

of proof by legitimate evidence. This we can not do. The pleader was not required to set out his evidence, and we can not say in advance what facts would be admissible in proof of the allegation, but we can not say, either, that it may not be shown. One allegation, in effect, is, that the amount of the note sued on was lost. That note, at least, should have been risked by plaintiff in the venture. If that venture failed, through plaintiff's fault, we cannot see why the whole loss should fall upon defendant. It is true that defendant got the goods for the notes, but the goods were risked and lost in the business, the risks of which the plaintiff was to share. Had plaintiff actually entered the partnership and the failure had still occurred, he would have lost his capital; and if the failure had not occurred, defendant would have saved his. Plaintiff could not legally violate his agreement and throw the whole loss upon defendant; but, if the defendant, with prudent management, lost, through plaintiff's wrong, plaintiff should be made to share the loss.

These facts may be susceptible of proof. Evidence of loss in other ways may be admissible, to enable the court or jury to arrive at a just determination of the damage, if any, which resulted to defendant from plaintiff's breach of his agreement. If the damages are not susceptible of exact measurement, a reasonable estimate may nevertheless be attainable from facts and circumstances within the reach of the parties.

We do not think, however, that the court, in this case, can enter the investigation of the question suggested by the answer, to ascertain what would have been the profits from the business had plaintiff made the partnership. The partnership was never formed and no partnership business was ever conducted. The only business that was carried on failed, and cannot furnish any evidence that profit would have resulted from that which was contemplated, but never existed. Nothing but pure speculation and conjecture would guide such an investigation. It is well settled that an action may be maintained for a breach of a contract to form a partnership; and where there is any guide by which to ascertain what would have been the profits of the business, they may be recovered, because the making of profits is the purpose of the contract. But, in the cases which we have found, where such recovery was allowed, there was an established business, with a record of profits, from which the complaining party was excluded. Sometimes evidence of the value of services of the partner excluded has also been admitted, as furnishing not as an absolute standard, but as aid to the jury in forming an estimate. Sedgwick on Damages, secs. 193, 194; Sutherland on Damages, p. 118, et seq., and authorities cited in each; Ball v. Britton, 58 Texas, 57; Hunt v. Reilly, 50 Texas, 100.

We will not protract this opinion by further effort to define the modes of proof. The evidence must be governed by the nature of the case, and be such as furnishes some reasonably safe and fair means of arriving at the damages sustained. The result must not be arrived at by mere conjecture, but must rest upon evidence reasonably proving it.

It is suggested that some of the facts alleged are inconsistent with the averment as to the promise to obtain credit and to form a partnership, and the alleged consequences which flowed from their breach. However improbable those averments, considered in connection with other facts stated, may be, they are not legally inconsistent with such facts, and we must, on exception, take them as true.

*Reversed and Remanded.*