BROWN v. DAVIS et al.    (No. 822.)

(Court of Civil Appeals of Texas. Amarillo. June 26, 1915.)

1. PLEADING  ⬤⟹205—ANSWER—SUFFICIENCY.

An answer presenting a good defense is good against a general demurrer, though it contains matters which might be stricken out upon special exception.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 491–493, 495, 496, 498–510; Dec. Dig. ⬤⟹205.]

2. APPEAL AND ERROR  ⬤⟹232—OBJECTIONS TO PLEADING—REVERSAL.

Where a general demurrer as well as special exceptions were sustained to an answer which presented a good defense, though it was open to special exceptions, the judgment

will, on defendant's appeal, be reversed, though he failed to complain of the sustaining of the exceptions.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1351, 1368, 1426, 1430, 1431; Dec. Dig. ⬤⟹232.]

3. BILLS AND NOTES  ⬤⟹477—ACTIONS—DEFENSES—ANSWER.

An answer, averring that a relation of trust and confidence existed between plaintiff and others, that they made misrepresentations to him as to the nature of the corporation about to be organized, that by reason of such misrepresentation he executed a note in favor of the corporation, not believing that it was in payment of a stock subscription, but understanding that it was only to enable him to procure loans, and that the agents of the corporation procured the making of such misrepresentations, of which facts the holder had knowledge, presents a good defense in an action on the note.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1524, 1525, 1558; Dec. Dig. ⬤⟹477.]

4. BILLS AND NOTES  ⬤⟹481—ACTIONS—ANSWER—DEFENSES.

An answer, averring that the holder of a note, obtained through false representations by the agents and promoters of corporation, was the brother-in-law of the promoter, that the personal and business relations existing between them were intimate, that though the maker was solvent the note was bought at a great discount, that the holder failed and refused to make any inquiries with reference to the origin of the note, and that the maker was of weakened mentality, is sufficient to charge that the holder was not a bona fide purchaser without notice.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1530–1532, 1559–1561; Dec. Dig. ⬤⟹481.]

5. PLEADING  ⬤⟹228—DEFECTS—EXCEPTIONS.

Uncertainty in respect to time is a defect which can be raised by exception alone.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 584–590; Dec. Dig. ⬤⟹228.]

6. BILLS AND NOTES  ⬤⟹481—ACTIONS—DEFENSES—ANSWER.

In view of rule 17 for district and county courts, providing that in passing upon a general demurrer every reasonable intendment shall be indulged in its favor, an answer, averring that the holder of a note obtained it through misrepresentations, acted in bad faith in not making inquiries, and that there were sufficient facts to charge him with knowledge, is sufficient to show that the holder acquired knowledge of the infirmity of the instrument before he acquired it.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1530–1532, 1559–1561; Dec. Dig. ⬤⟹481.]

Appeal from District Court, Potter County; Jas. N. Browning, Judge.

Action by A. J. Davis against H. W. Brown and others. From a judgment sustaining a general demurrer and special exceptions to the answer of Brown, he appeals. Reversed and remanded.

Synnott & Underwood, of Amarillo, for appellant. Lumpkin & Harrington, of Amarillo, for appellees.

HALL, J. Appellee Davis sued appellant Brown upon a promissory note in the sum of $1,000, making the Amarillo Securities Invest-

ment Company and Mark Logan codefendants. The court sustained a general demurrer and all special exceptions to the answer of Brown, and upon his failure to amend rendered judgment against him for the full amount of the note, from which judgment this appeal is prosecuted.

The first nine paragraphs of the answer consist of admissions and denials of specific facts in plaintiff's pleading. Beginning with the tenth paragraph, the allegations are as follows:

"Specially answering herein, this defendant shows to the court: That some time in the summer of 1912 the Bankers' Trust Company was conceived and originated, and the Amarillo Securities Investment Company was also conceived and originated for the express and only purpose of selling the capital stock of the said Bankers' Trust Company and promoting and organizing the same and getting a permit for it to do business in Texas as a trust company, and that the promoters, officers, and managers of the Bankers' Trust Company were either officers, managers, and owners of the Amarillo Securities Investment Company, or were in control of the same in some way, the details of which are unknown to this defendant, and that D. C. Lowe, R. L. Underwood, and one Brown, whose first name and initials are unknown to this defendant, were, the agents and acting for both said companies in the matter of selling to the public the stock of said Bankers' Trust Company, during the time hereinafter alleged and set out.

"(11) That during said year 1912, and especially during the summer and fall, this defendant was in feeble health and prematurely old, and that his said poor health and old age had weakened his mind and will to such an extent that he was easily persuaded and overreached, and his judgment was poor, and his will was easily overcome by artful solicitors and scheming agents with their glittering descriptions of ventures and prospects.

"(12) This defendant further shows to the court: That for many years theretofore he had been well acquainted with the said D. C. Lowe, and that he had been on intimate social and business relations with the said Lowe, and during many years had transacted a great deal of banking business through the said Lowe, and especially in his declining years had learned to look to and lean upon the said D. C. Lowe for advice, counsel, and direction in all weighty business matters, and had for many years known and respected and had great confidence in the father of the said R. L. Underwood, which fact inclined him, especially in his said weakened mental and physical condition, to have great confidence in the statements, representations, and promises of the said R. L. Underwood.

"(13) That about August, 1912, the said Brown approached this defendant and represented to him that said Bankers' Trust Company of Amarillo, Tex., was already organized and a going concern doing a great volume of business, and that it had on hand an almost unlimited amount of money which it was already ready, willing, and able to loan and was loaning to various parties and for various enterprises in the Panhandle and Plains of Texas, and that it was already in shape to pay large dividends to its stockholders and was in a present financial condition as to enable it to pay and guarantee to all stockholders immense dividends upon its capital stock in the future, and thereupon solicited this defendant to give said company his note in some amount, either for stock in said company or to share in the privileges of its loaning money to him thereafter, but the exact nature of which this defendant did not

then and does not now understand, but that this defendant was not then wholly taken in by said proposition and steadily refused to do so until time hereinafter mentioned.

"(14) That thereafter and before November 15, 1912, the said R. L. Underwood, another agent of the companies hereinbefore named, came to this defendant's house and made substantially the representations hereinbefore alleged as having been made by the said Brown, and in addition thereto represented to this defendant that said company already had on hand enough money to supply the whole Plains country and was ready, willing, and anxious to loan the same to citizens thereof, including this defendant. That this defendant then owed a note for several thousand dollars which was soon to become due, and the same was secured by a lien on the cattle of this defendant, and the said R. L. Underwood, knowing the same that this defendant was anxious to find sufficient money somewhere to take up said note, then and there proposed to this defendant that if he would only execute a small note to said Bankers' Trust Company, simply to be held by it as collateral, as soon as this defendant's said note matured said Bankers' Trust Company would loan him sufficient money to take up said note, and on such occasion repeatedly urged this defendant to do the same, and informed this defendant that he could within a few hours after executing said note obtain any amount of money from said Bankers' Trust Company which he might care for, and when this defendant demurred and hesitated, he, the said R. L. Underwood, urged this defendant to consult the said D. C. Lowe.

"(15) That at the suggestion of the said R. L. Underwood, and because of the aforesaid confidence he had in the said Lowe, and because of his habit and practice of following the advice of the said Lowe, he soon thereafter did consult the said D. C. Lowe, and the said D. C. Lowe informed him, this defendant, that the said Bankers' Trust Company was a great enterprise, and that he, the said Lowe, had such confidence therein that he had invested several thousand dollars cash therein, and that many others of the best business men of the Panhandle and Plains country had also invested their property and money therein, and then and there advised this defendant to accept the proposition of the said Underwood as hereinbefore set out.

"(16) This defendant further shows to the court: That by reason of his confidence in the said Lowe and said Underwood, and by reason of his weakened mental and physical condition, and by reason of his aforesaid desire to find a place to get the money aforesaid to take the note up aforesaid, he was overreached, overpersuaded, and his will was overcome, and his good judgment beclouded to such an extent that he believed all of said representations to be true, and that he implicitly relied upon all of the statements of the said Underwood and the said Lowe and placed himself under their control and direction.

"(17) That thereafter about the 15th day of November, 1912, the said Underwood presented to him for his signature some kind of an instrument, the exact nature of which he did not then and does not now understand, but which was probably the note herein sued on, and that, unless it was and is the note herein sued on, then the note herein sued on was never signed by him or by any one by his authority, and thereupon told this defendant that if he would sign the same it would be attached to a receipt therefor showing that he was entitled to the privileges of borrowing money from said company, and that the same would be held by said company as collateral to secure said future loans, and that upon his later application for said funds said company would loan him the same as hereinbefore set out, and that by rea-

son of the matters hereinbefore alleged his judgment and will and reason were all overcome, and he did sign the same believing the same to be for the purpose only of securing him the future loan of said money and would be held as security therefor and would be attached to a receipt showing him entitled thereto, and would be used for no other purpose.

"(18) This defendant further shows to the court: That all of the aforesaid representations of the said Brown and the said Lowe and the said Underwood were false. That said Bankers' Trust Company had not then begun business and never did thereafter begin business. That it had no money whatever and no prospects of ever obtaining any. That it could not then loan this defendant any money and had no other property on which it could hope or expect to receive any money to loan this defendant, or for any other purpose, and that said D. C. Lowe had not placed therein the said amount of money so represented by him, and none of the other parties mentioned by said agents had done the same. That all of said representations were knowingly made by said agents and were knowingly false and were made for the express purpose of defrauding, deceiving, and overreaching this defendant with full knowledge on their part of his aforesaid confidence in them and his aforesaid weakened mental and physical condition.

"(19) That, soon after the execution of said paper and delivery to said agents as aforesaid, the said Brown and the said R. L. Underwood disappeared, and this defendant's aforesaid lien on his cattle was nearing maturity, and he applied to the said D. C. Lowe and asked him to notify the said Bankers' Trust Company that he was ready for his money and to request them to send the same on to him at once, and thereafter made other efforts to obtain the same, but wholly failed to receive any money or other thing of value on said note.

"(20) This defendant further shows to the court that in June, 1913, this defendant received 50 shares of the capital stock of the said Bankers' Trust Company of Amarillo, Tex., and this was the first time he ever knew that he had subscribed for the stock in said company instead of making an application for a loan, or that such claim was made by any one.

"(21) This defendant further shows to the court that it is now claimed by said Bankers' Trust Company that said note was given wholly as payment for said 50 shares of capital stock of said Bankers' Trust Company, and this defendant says that if in fact the writing signed by him showed that it was given therefor, instead of to secure money as represented to him, then that in either event the same is absolutely void and of no force and effect; and of this he puts himself upon the country.

"(22) This defendant further shows to the court that at the time of the execution of said paper or papers he was in the town of Lockney, several miles from his home, and did not have his glasses with him and could not read without the same; that, as hereinbefore alleged, he had implicit confidence in said agents of said companies, and was wholly under their influence and control, and he did not read said instrument or instruments, and he implicitly accepted their statements as to the contents thereof and does not even now know the real contents of the paper or papers signed by him as hereinbefore shown, that he was only signing a note for money to be advanced to him later and a receipt to be attached thereto and made a part thereof for the purpose of showing his right to receive said money thereon, and that if said receipt has been detached from said note that he did not execute the same in the form it now is in; and of this he puts himself upon the country.

"(23) This defendant further shows to the court that the said Mark Logan and the plaintiff herein, A. J. Davis, are and have been brothers-in-law for a great many years, frequently visiting each other and each intimately acquainted with the affairs of the other.

"(24) This defendant further shows to the court that he is informed that the plaintiff herein is claiming, and will claim, that he is an innocent purchaser of the note herein sued upon without any notice as to this defendant's defenses against the same, and that he paid full value therefor; but this defendant shows to the court that plaintiff did have actual and constructive notice of all said defenses, and did know that said note was given, if for any consideration at all, for capital stock in said Bankers' Trust Company, and did know that the same was void; and of this he puts himself upon the country.

"(25) This defendant further shows that plaintiff, before his alleged purchase of said note, was informed and believed that this defendant was amply solvent, and that said note was worth 100 cents on the dollar so far as the solvency of the maker was concerned, and there was then due thereon more than one-half a year's interest, and it was offered to plaintiff for less than 65 cents on the dollar, and that this was sufficient notice to plaintiff that there must be some defense thereto and was sufficient to put plaintiff on an inquiry and which would have put a reasonably prudent person upon an inquiry, which if properly followed out would have led plaintiff to a discovery of this defendant's defenses thereto, and of this he puts himself upon the country; and plaintiff acted in bad faith in not making and following such inquiry.

"(26) This defendant further shows to the court that the plaintiff well knew that Mark Logan was the promoter of the said Bankers' Trust Company, and that promoting the same and selling stock thereof was his principal business at such time and had been for many months theretofore, and that all notes and other papers placed into his hands more than likely related to the sale of such stock, and that this alone was sufficient to put the plaintiff upon such notice as would cause a reasonably prudent person to make an investigation and would have led to knowledge of the fact that said note was given, if for any consideration, for said capital stock, and in not making such inquiry plaintiff acted in bad faith.

"(27) That defendant further shows to the court that said note was payable to the Amarillo Securities Investment Company, and that the plaintiff accepted the same knowing that the same was indorsed by Mark Logan for said company, and negligently failed and refused to make any inquiry as to what said company's business was, when the least inquiry would have shown plaintiff that all papers handled by said company were given for capital stock in the said Bankers' Trust Company, and such failure was bad faith in plaintiff.

"(28) That defendant further shows to the court: That for many months between November 15, 1912, and the date of the alleged purchase of said note by plaintiff, the said Amarillo Securities Investment Company published repeatedly large display advertisements in many newspapers reaching every community in Texas, showing that the Amarillo Securities Investment Company was engaged in the business of selling capital stock of the Bankers' Trust Company, and, if when said note was presented to plaintiff he had made such inquiry as a reasonably prudent person would have made under the circumstances, he would have learned that all notes payable to said company were given for said stock, and of this he puts himself upon the country, and failure not to do so was such negligence as amounted to bad faith.

"(29) That by reason of the premises said note is and always has been absolutely void even in the hands of an innocent purchaser, and this defendant is not liable to plaintiff for any part thereof, whether plaintiff had notice of his defense or of such facts which would have led a

reasonably prudent person to an investigation as would have discovered the same or not.

"(30) That, in the event said note is not absolutely void in the hands of an innocent purchaser, then this defendant shows to the court that plaintiff had actual knowledge of the consideration and want of consideration therefor and all of this defendant's defenses against the same, or, if this defendant be mistaken there, then by reason of the matters hereinbefore enumerated plaintiff, when he purchased the same, had notice of such facts which would have led a reasonably prudent person to make inquiries which if they had been properly pursued would have led plaintiff to a discovery of all this defendant's defenses hereof, and he acted in bad faith in not doing so; and of this he puts himself upon the country.

"(31) This defendant further shows to the court that, if he be mistaken in all of the foregoing, then he shows to the court that said note was procured by fraud as hereinbefore set out and was fraudulently obtained and put into circulation, and therefore the plaintiff, even though he be an innocent purchaser as alleged, can only recover herein $666.66⅔, with 6 per cent. thereon from the date of said alleged purchase of said note, and cannot recover any attorneys' fees; and of this he puts himself upon the country."

[1-3] It will be observed that the answer alleges the agency of Lowe, Underwood, and Brown, for the Bankers' Trust Company, in the matter of selling stock. This allegation is followed by the specific statement that defendant, during the time negotiations leading up to the purchase of the stock were on hand, was in feeble health, which together with premature old age had weakened him mentally and physically and destroyed his will power to such an extent that he was easily persuaded and overreached. It is alleged that a relation of trust and confidence existed between plaintiff upon the one hand, and Lowe and Underwood upon the other, and that he was accustomed to rely upon the advice and counsel of Lowe and implicitly relied in this matter upon Lowe and Underwood and was deceived by their misrepresentations. In the light of the discussion by Judge Fisher, in I. & G. N. Ry. Co. v. Shuford, 36 Tex. Civ. App. 251, 81 S. W. 1194, 1195, we think the allegations a sufficient statement of the facts as against a general demurrer. See, also, Parker v. Naylor, 151 S. W. 1096. The false representations alleged to have been made are that the Bankers' Trust Company was a corporation already organized and doing a great volume of business, having an almost unlimited amount of money, which it was lending to various parties; that it was already in shape to pay large dividends to its stockholders and had sufficient money on hand to supply the whole Plains country; that Lowe himself had invested several thousand dollars in cash in it, together with many others, among the best business men of the Panhandle and Plains country. It is further shown that appellant owed a note for several thousand dollars which would soon become due, and which, without the proposed loan from the Bankers' Trust Company, he would not be able to meet; that at such time one of the above-

named agents proposed to him, if he would only execute a note to the Bankers' Trust Company simply to be held by it as collateral, that as soon as said note matured the company would lend him sufficient money to take up the note; and that he was informed that he could within a few hours after executing said note obtain any amount of money from said Bankers' Trust Company. Appellant alleges that all of the above statements were falsely and fraudulently made, that he relied thereon and was deceived thereby. While the pleading contains allegations of many representations not of fact but which are merely the expressions of opinion and extravagant promises by the agents concerning the benefits likely to accrue to defendant, these are matters which should be met by special exception and do not affect the sufficiency of the petition as against a general demurrer. Hoechten v. Standard Home Co., 157 S. W. 1191. If the answer to which a general demurrer is filed is sufficient to enable the court to say that a good defense exists, a general demurrer should not be sustained, even though it contains matters which should be stricken out upon special exception. In his brief, appellant presents as error only the action of the court in sustaining the general demurrer. The fact that he does not complain of the judgment sustaining the special exceptions is no reason for refusing to reverse the judgment, if upon the whole a good cause of action is shown, even though there may be defects in the form of stating it. Bigham Bros. v. Port Arthur Channel Co., 100 Tex. 192, 97 S. W. 686, 13 L. R. A. (N. S.) 656. We think the misrepresentations set out refer to material matters which could not ordinarily be known to the defendant, and, since the facts rested peculiarly within the knowledge of the agents who it is alleged made them, he was warranted in relying thereon.

[4] Appellee insists that the allegations are not sufficient to show notice to Davis of the defenses urged by appellant. We do not assent to this contention. It is alleged that appellee is a brother-in-law of Mark Logan, who was the promoter of the Bankers' Trust Company, and that the personal and business relations existing between Logan and appellee were intimate. It is alleged as a fact that plaintiff did have actual and constructive notice of all of said defenses, and that the note, if given for any consideration at all, was executed and delivered in payment for capital stock of the Bankers' Trust Company; that Davis knew defendant was solvent and that the note in question was worth 100 cents on the dollar if not fraudulently procured, and, notwithstanding the fact that at the time of his purchase there was more than six months' interest due thereon, he paid only 65 cents on the dollar therefor; that he knew Mark Logan was a promoter of the company and had for many months been engaged in selling stock of the

company; that he negligently failed and refused to make any inquiries with reference to the origin of the note and ignored all of the above facts which would have led a reasonably prudent person to an investigation by reason of which he would have discovered that said note was absolutely void; and that in the purchase of said note and in refusing to make such investigation he was guilty of bad faith. It is further alleged as a fact that the note in question was executed in payment for 50 shares of stock in the Bankers' Trust Company, for which reason it was void, under the Constitution and laws of this state. It is true that appellee does not allege directly and with certainty the purpose of the execution of the note, nor does he state with clearness the terms of the contract and agreement which he says was attached to the note and formed a part thereof; but he shows, as an excuse for his failure to make his allegations more direct and certain, his weakened mental condition, and further the possession of these instruments by the plaintiff. Under fundamental rules of pleading, we think this is all he was required to do. G., C. & S. F. Ry. v. Smith, 74 Tex. 276, 11 S. W. 1104; McFarland v. Mooring, 56 Tex. 118; Schneider & Davis v. Ferguson & Son, 77 Tex. 572, 14 S. W. 154; Florida Athletic Club v. Hope, 18 Tex. Civ. App. 161, 44 S. W. 10; Varner v. Carson, 59 Tex. 303.

[5, 6] Appellee insists that, because it is not alleged when appellant acquired notice of the matters set up in defense by him, the petition is fatally defective. The general rule is uncertainty in respect to time is a defect which can be reached by special exception alone. Henry v. McCardell, 15 Tex. Civ. App. 497, 40 S. W. 172; Townes, Texas Pleading (2d Ed.) 409. In our opinion, however, paragraphs 24, 25, 26, 27, 28, and 30 of the answer are sufficient to charge notice and bad faith on the part of appellee prior to the date of his purchase of the note, although the exact date is not given. Rule 17 for the government of district and county courts provides that in passing upon a general demurrer every reasonable intendment arising upon the pleading excepted to shall be indulged in favor of its sufficiency. Northwestern National Insurance Co. v. Woodward, 18 Tex. Civ. App. 496, 45 S. W. 185; Patterson & Wallace v. Frazer, 79 S. W. 1077; Morgan v. Brown, 156 S. W. 361. Construed according to this rule, we must hold that the answer was sufficient as against a general demurrer, and the judgment is therefore reversed, and the cause remanded.