KINGSVILLE COTTON OIL CO. v. DALLAS WASTE MILLS. (No. 1492.)

(Court of Civil Appeals of Texas. Amarillo. March 12, 1919. Rehearing Denied April 16, 1919.)

1. SALES ⏝58—CONDITIONAL CONTRACTS— MANUFACTURE AND SHIPMENT OF GOODS.

A contract whereby defendant was to make 200 bales of cotton linters, mill run, being seller's make, at 3⅛ cents per pound, f. o. b. cars, and to ship them to plaintiff in car lots "as fast as made," was not a contract conditional on the making of the linters; the phrase "as fast as made" relating only to the shipment, and not being a condition precedent to the duty to ship.

2. SALES ⏝172—BREACH—EXCUSE.

Where a contract for the manufacture of cotton linters did not mention the question of power in running defendant's mill, the failure of a power company to furnish power to defendant, whereby defendant was prevented from manufacturing the linters, did not excuse a breach of the contract, it being possible for defendant to have procured power elsewhere.

3. CONTRACTS ⏝309(1)—BREACH—IMPOSSIBILITY OF PERFORMANCE.

One may by an absolute contract bind himself to perform contracts which subsequently become impossible or to pay damages for nonperformance, and such construction is to be put on an unqualified undertaking where the event which causes the impossibility was or might have been anticipated and guarded against in the contract, or where the impossibility arose from the act or default of the promisor.

4. CONTRACTS ⏝309(1)—BREACH—IMPOSSIBILITY OF PERFORMANCE.

Where the event which prevents the performance of a contract is of such a character that it cannot reasonably be supposed to have been in contemplation of the contracting parties, they will not be bound by general words which, though large enough to conclude, were not used with reference to the possibility of the particular contingency which afterwards happened.

5. APPEAL AND ERROR ⏝931(6)—REVIEW— ADMISSION OF EVIDENCE.

Where the trial is by a court without a jury, and there are no findings of fact in the record, it will be presumed on appeal in support of the judgment that the court did not consider improper testimony although admitted.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Action by the Dallas Waste Mills against Kingsville Cotton Oil Company for breach of contract. Judgment for plaintiff, and defendant appeals. Affirmed.

Claude Pollard, of Houston, and E. H. Crenshaw, Jr., of Kingsville, for appellant. C. M. Smithdeal, of Dallas, for appellee.

HALL, J. On August 28, 1915, J. G. Leavell Company, brokers, negotiated a contract between the parties to this suit, whereby appellant sold appellee—

"200 bales of cotton linters, mill run, free from trash, being seller's make, at 3⅛ cents per pound, f. o. b. cars Kingsville, Texas."

"*Shipment.* Beginning October, and shipped in car lots as fast as made."

Only 25 bales were delivered under the contract, and appellee sued appellant for damages on account of the breach, alleging, in substance, that by the terms of the contract appellant was obligated to begin shipping cotton linters in October, 1915, and continue to ship in carload lots as fast as made until the contract was fulfilled; that the average bale of cotton linters was 500 pounds, and that it was so intended by the parties to said contract; that appellant had delivered to plaintiff under said contract 25 bales, but failed and refused to deliver any more; that after due notice, on January 25, 1916, appellee bought 175 bales of linters at 5¾ cents per pound, f. o. b. Texas common points, which was the lowest price at which said linters could be bought; that at said price the difference between the contract price and the market price of said linters was $2,296.87; that appellant had had a reasonable time and more in which to perform the contract before January 27, 1916, but had failed and refused to do so; that, if it should be held that appellant was entitled to have until the end of the cotton season in which to fulfill the contract, then in such event plaintiff's damages amounted to $4,000, for the reason that at the end of the season the difference between the contract price and the market price was 2¾ cents per pound.

Appellant demurred generally and specially, pleaded the general issue, and specially, in substance, that the contract sued upon was a contract of manufacture and sale; that it was contemplated by both parties that the linters should be manufactured by appellant and shipped to appellee, beginning with the month of October, 1915, and thereafter as fast as made; that in compliance with said contract appellant shipped to appellee, in the month of October, 25 bales, and was prevented from further shipments by circumstances over which it had no control, to wit, that the electrical power company, which at that time, and for a long time prior thereto, had furnished the power to operate appellant's mill, and which had been a dependable source of power, broke down suddenly and without

---

⏝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

warning, and ceased furnishing power to appellant; that said power plant could not be repaired until late in January, 1916, and that by said last-named date the cotton oil mill season had practically ended, and seed could not be obtained for making linters of the grade and quality required; that on August 16, 1916, an unprecedented tropical hurricane struck and demolished the mill of appellant, and that appellant exercised due diligence to rebuild its mill; that during the season of 1916 and 1917 no cotton was raised within the territory occupied by said mill, and appellant manufactured no linters except during the month of February, 1917, when it manufactured 35 bales, which it shipped to appellee to apply on the contract sued upon, at the contract price of 3⅛ cents per pound; that said shipment was accepted by appellee without prejudice to the rights of either party; that except said 35 bales appellant had neither manufactured nor sold any linters since October, 1915. Appellant pleads certain items of credit, aggregating $579.94, and prays that in the event appellant should recover that it have credit for said sum. By supplemental petition appellee alleged that appellant had authorized the J. G. Leavell Company, brokers of Houston, Tex., to sell said 200 bales of linters; that at said time appellant's mill was in operation, and it had cotton seed on hand from which to manufacture said linters; that appellant expressly and impliedly represented to Leavell Company, its agents and broker, and Leavell Company expressly and impliedly represented to appellee, that appellant had the seed on hand from which to make the linters and had its mill in operation and was able to perform the contract; that appellee relied on said representation of fact being true, and entered into the contract; that appellee had sold the linters to its customers, and in order to keep its contract was compelled to buy from other sources, at an advanced price, the linters which appellant had agreed to furnish. A trial to the court resulted in a judgment in appellee's favor for $1,862.90, with interest and costs.

The first assignment is that the court erred in not sustaining appellant's general demurrer to the plaintiff's first amended original petition. Appellant's general demurrer was not urged until after the first supplemental petition was filed. If the original and supplemental petitions, considered together, state a cause of action, the court did not err in its ruling on the demurrer. We think the plaintiff's pleadings, taken together, show its right to recover. The contention under this assignment is that because the plaintiff's original petition shows that by the terms of the contract the linters were to be delivered as soon as they were made, and does not by further allegation show that appellant ever made any more than the 25 bales delivered in October, the petition is insufficient; that

appellant's obligation to deliver the remaining 175 bales rested upon the condition that it thereafter made that number.

[1] In our opinion, the contract cannot be construed as a conditional one. The recitation is the sale of "two hundred bales of cotton linters, mill run, * * * being seller's make, at 3⅛ cents per pound, f. o. b. cars, Kingsville, Texas." We may infer from this recital that appellant expected to manufacture at its own mill at least 200 bales of linters during that season. The recital, "Shipment. Beginning October, and shipped in car lots as fast as made," was not a condition limiting or in any manner modifying the obligation of appellant to ship fully 200 bales mentioned in the contract, but was simply a stipulation fixing the time when appellant should commence shipping, and binding it to continue shipments in carload lots as rapidly as it could make them. That term was inserted for the benefit of appellee, and, since no date was fixed when the last carload should be shipped, appellant was bound to make the linters and complete the shipment within a reasonable time. The words, "as fast as made," relate only to the time when the several shipments should be billed out, and should not be construed to be a condition upon the performance of which appellant's obligation rested. To hold that the making of the linters by appellant was a condition precedent to its duty to ship would, in effect, relieve it, at its option, of any obligation to comply. Such a construction would render the contract unilateral and void for want of mutuality. We are convinced of the soundness of our holding by a consideration of the facts set up by appellant by which it sought to justify its failure to fulfill the contract.

[2] It is alleged that it failed to make the linters during the season because a certain electrical power company, from which it obtained the power to operate its mill, broke down and could not furnish it power. The failure of the electrical power company was the condition which caused the breach—a condition not mentioned in the contract, and not within the contemplation of the parties at the time it was executed, but which arose thereafter. Such a condition will not excuse the breach. The contract was made without regard to the question of power used in running the mill, since it is not mentioned therein. Northern Irrigation Co. v. Dodd, 162 S. W. 948; Henry v. McCardell, 15 Tex. Civ. App. 497, 40 S. W. 172. The doctrine governing the liability of appellant in like cases is stated in volume 3, Elliott on Contracts, § 1891, as follows:

"The general doctrine that, when a party voluntarily undertakes to do a thing without qualification, performance is not excused by unavoidable accident or other contingency not foreseen, it becomes impossible for him to do the act or thing he agreed to do, is well settled. As

a man consents to bind himself so shall he be bound. Where no express or implied provision as to the event of impossibility can be found in the terms or circumstances of the agreement it is a general rule of construction, founded on the absolute and unqualified term of the promise, that the promisor remains responsible for damages notwithstanding the supervening impossibility or hardship."

Even if the words, "as fast as made," should be construed to be a condition, the same authority (section 1897) declares:

"It is no excuse for the nonperformance of a condition that it is impossible for the obligor to fulfill it, if the performance be in its nature possible."

6 R. C. L. p. 998, § 365, states the rule in this language, with reference to implied conditions ' excusing nonperformance:

"But when it is admitted that implied conditions in an absolute contract may excuse performance, when performance has become impossible, the question whether subsequent impossibility is an excuse for nonperformance seems to become one of construction. Viewing the subject in this way, the conclusion reached in some modern decisions seems to be at variance with the rule as stated in the early English decisions. It has been said that the words of a mere general covenant will not be construed as an undertaking to answer for the happening without the covenantor of a subsequent event which renders performance of the covenant itself not merely difficult, or relatively impossible, but absolutely impossible, owing to the act of God, the act of the law, or the loss or destruction of the subject-matter of the contract. Where the performance is thus rendered impossible, the inquiry naturally arises whether there was a purpose to covenant against such an extraordinary, and therefore presumably unapprehended, event, the happening of which it was not within the power of the covenantor to prevent.

[3] "In other words, there can be no doubt that a man may, by an absolute contract, bind himself to perform things which subsequently become impossible, or to pay damages for the nonperformance, and this construction is to be put upon an unqualified undertaking where the event which causes the impossibility was or might have been anticipated and guarded against in the contract, or where the impossibility arose from the act or default of the promisor.

[4] "But where the event is of such a character that it cannot reasonably be supposed to have been in the contemplation of the contracting parties when the contract was made, they will not be held bound by general words which, though large enough to conclude, were not used with reference to the possibility of the particular contingency which afterwards happens."

We do not intend to convey the impression that we think the furnishing of power by the electric company was an implied condi-

tion, or that the failure to furnish such power by the electric company rendered performance of the contract by appellant impossible. Upon the failure of such power it became appellant's duty to substitute other power or pay the damages incident to a breach, since there is nothing in the contract indicating that the power with which it operated its mill would likely fail. The reasonable inference from the language of the writing is, as alleged by appellee, that appellant had and would continue to have the power necessary to run its mill and the cotton seed available from which to obtain the lint, else some mention of it would have been made in the instrument. This case is distinguishable from the case of Wright v. Farmers' National Bank, 31 Tex. Civ. App. 406, 72 S. W. 103, and the Texas cases therein cited, in that here the intention of the appellant to fulfill the contract is manifest and may be inferred from its sale of and agreement to make and ship 200 bales of linters. The absolute promise is inferable from the failure to mention the contingency which actually prevented performance. In the Wright Case and the cases cited therein, the inability to perform until the happening of the conditions upon which the promises to pay are predicated are expressed in the contracts themselves. In the instant case no doubt is expressed as to the appellant's ability to fulfill the contract. The rule with reference to excuses for nonperformance of similar contracts is thus stated in 13 C. J. § 706:

"The general rule is that where a person, by his contract, charges himself with an obligation possible to be performed, he must perform it unless its performance is rendered impossible by the act of God, by the law, or by the other party; it being the rule that in case the party desires to be excused from performance in the event of contingencies arising it is his duty to provide therefor in his contract. Hence performance is not excused by subsequent inability to perform, by unforeseen difficulties, * * * by inevitable accident, or by the breaking of machinery. * * *"

What has been said also disposes of the fifth and sixth assignments.

[5] By the remaining assignments appellant insists that the court erred in admitting certain evidence. There are no findings of fact in the record, and since the trial was by the court without a jury, even if we grant that the admission of the evidence is error, we must presume in support of the judgment that the court did not consider improper testimony. Robinson v. Dale, 62 Tex. Civ. App. 277, 131 S. W. 308. There is sufficient evidence, without that objected to, to support the judgment, and it is affirmed.