### BUSSEY v. DAVIS et al. (No. 1045.)*

(Court of Civil Appeals of Texas. Beaumont. June 29, 1925. Rehearing Denied Nov. 4, 1925.)

1. **Evidence** ⬿417(9)—**Proper to allege and prove part of contract resting in parol.**

Where part only of contract is expressed in writing, it is proper to allege and prove the part resting in parol.

2. **Evidence** ⬿417(7)—**Plaintiff lessor held entitled to allege and prove part of contract resting in parol.**

Where written contract of lease of oil and gas rights required that an abstract of title be furnished to the lessee for his approval, but was silent as to who should furnish it and within what time, and as to the time allowed lessee for notifying lessor of defects, plaintiff *held* entitled to allege and prove the oral agree-

ment covering such matters as to which the contract was silent.

**3. Mines and minerals** ⬤⟿58—**Evidence held sufficient to warrant finding lessee waived right to have his attorney approve lessor's title.**

Evidence *held* sufficient to warrant finding lessee waived right to have his attorney approve lessor's title, as evidenced by abstract of title, and intended to use the lease as given him.

**4. Appeal and error** ⬤⟿930(3)—**Issues raised by pleadings and evidence, but not submitted or requested to be submitted, will be considered to have been found by trial court in such manner as to sustain judgment.**

Issues raised by pleadings and evidence, but not submitted or requested to be submitted, will be considered to have been found by trial court in such manner as to sustain judgment, in view of Rev. St. 1911, art. 1985.

Appeal from District Court, Panola County; Chas. L. Brachfield, Judge.

Suit by O. R. Davis against J. B. Bussey and another. Judgment for plaintiff for part of relief prayed for, and defendant named appeals, plaintiff assigning cross-errors. Affirmed.

J. M. Sanders and D. M. Short & Sons, all of Center, and Long & Strong, of Carthage, and Chas. L. Black, of Austin, for appellant. H. N. Nelson, Woolworth & Duran, and R. W. Priest, all of Carthage, and F. H. Prendergast, of Marshall, for appellees.

HIGHTOWER, C. J. This was a suit filed in the district court of Panola county by the appellee, O. R. Davis, as plaintiff, against the appellant, J. B. Bussey, and the First National Bank of Carthage, Tex., in which the appellee, for cause of action, made substantially the following allegations: That on or about January 27, 1920, he was the owner of a good fee-simple title to a number of tracts of land mentioned and described in his petition, and that on said date he executed and delivered to the appellant Bussey a certain oil and gas lease, by which he leased to appellant the land therein described for a consideration of $10,000 in money and one-eighth royalty of all oil that might be produced from the land; that on the same date the appellant Bussey deposited in the First National Bank of Carthage the sum of $10,000, which, according to the contract of the parties, was to be paid to appellee at the rate of $12.50 per acre upon his furnishing an abstract of title showing good title in himself to the lands covered by the lease, and that on the same date the appellant Bussey wrote to the bank the following letter:

"Jan. 27, 1920.

"The First National Bank, Carthage, Tex.— Gentlemen: I hand you herewith draft on the Guaranty State Bank, Timpson, Texas, for $10,000.00 (ten thousand dollars) which you will please collect and pay to Mr. O. R. Davis, at the rate of $12.50 per acre for oil and mineral leases this day executed by him in my favor, as titles to lands are approved by my attorney, and notice given you in writing to that effect, and as such payments are made by you, you are to deliver to me lease or leases so paid for by you, which lease will be deposited with you by Mr. O. R. Davis.

"Yours very truly,      J. B. Bussey."

The appellee further alleged that at the time of the execution and delivery of the lease and delivery of the order from appellant to the bank, it was agreed and understood and stipulated that, if the number of acres conveyed by the lease was not, in the aggregate, as much as 800 acres, the appellee was only to receive consideration for such acreage at the rate of $12.50 per acre; that appellee, according to the agreement and understanding of the parties, was to have a reasonable time in which to have an abstract of title prepared to be delivered to appellant; and that it was further agreed and understood between the parties at the time that, in the event there was any defect in appellee's title to any part of the land covered by the lease, such defect or defects were to be pointed out by appellant's attorney, and made known to appellee, who should have a reasonable time to perfect any such defects.

Appellee further alleged, in substance, that on April 12, 1920, an abstract of title was delivered by him to appellant, and that on the 4th day of May, 1920, appellant, for the first time, notified appellee that he was turning back the lease, without pointing out any defects touching the title of any of the land, and that appellant's attorney had not turned the title down, and that appellee had good title to 707 acres covered by the lease, but that appellant had refused to permit defendant bank to pay for any portion of said land, and that he was instituting this suit for so much of the $10,000 as the 707 acres amounted to, at the rate of $12.50 per acre.

The appellant Bussey answered by general demurrer and a number of special exceptions, by a general denial, and then specially answered, in substance, as follows: That it was understood and agreed between the parties to the lease contract that the appellee was to furnish an abstract of title showing a marketable or merchantable title in himself to the lands covered by the lease, and that such abstract should be furnished within a reasonable time, and that 30 days was considered by the parties to be a reasonable time in which to furnish the abstract, and that appellant's attorney was to approve the title to each tract of land covered by the lease as being a marketable or merchantable title before there should be any obligation on appellant's part to take such tract or

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tracts, and before appellee should be entitled to any part of the money deposited in the bank; that appellee never did furnish an abstract of title such as was contemplated by the parties, showing in him a marketable or merchantable title, and that therefore appellant's attorney was unable to approve appellee's title to any tract or tracts of land covered by the lease; and that his said attorney had declined to approve the title to any tract or tracts covered by the lease, for the reason that the abstract of title furnished by appellee did not show in him a marketable or merchantable title to any of such lands; that since appellee had failed to furnish an abstract of title showing in himself a marketable or merchantable title to any of the lands covered by the lease, and, since it was the contract of the parties that appellant was not obligated to take any of the tracts until an attorney had approved the title thereto as being marketable or merchantable, there was no breach of contract on appellant's part to take or pay for any of the land covered by the lease; and that appellee was not entitled to recover any portion of the money deposited in the defendant bank.

Appellant then, by way of cross-action, prayed for recovery against appellee and the bank for the amount of the deposit that he had placed in the bank, with legal interest thereon, etc.

The defendant bank answered by general demurrer and general denial, and then specially alleged, in substance, that it was a mere stakeholder of the deposit made by appellant, and that it was willing to pay such amount to such of the parties as the court might determine to be entitled thereto, and prayed to be excused with its costs, etc.

Appellee filed a supplemental petition in answer to the allegations contained in appellant's answer, which was, in substance, as follows: That his title to at least 707 acres of the land covered by the lease was a good fee-simple title from the sovereignty of the soil, and that in addition thereto his title was good and indefeasible under the several statutes of limitation of this state; that appellant's attorney had never at any time pointed out any specific defects in any portion of the land covered by the lease; and that appellee had therefore not been given an opportunity to meet any defects, if there were any, in his title to any of such lands, but that he had always been willing to do so, and had offered to do so, and had offered to make a bond guaranteeing appellant in the title to the tracts of land covered by the lease, but that appellant had, arbitrarily and in bad faith, refused to accept his offer to perfect title, and had refused to point out any defects as to any of the tracts covered by the lease; that appellee had incurred a large expense in getting up the abstract of title; and that he was not notified until the 3d or 4th day of May, 1920, that appellant was dissatisfied with the title to any tract covered by the lease; that appellant, immediately after the lease was executed and delivered to him, caused the same to be placed of record in the deed records of Panola county, and immediately thereafter commenced to exercise acts of ownership over the land covered by the lease; that appellant took the lease, and went from Carthage, in Panola county, to Shreveport, in the state of Louisiana, on the 12th day of April, 1920, and for more than two weeks thereafter attempted, while at Shreveport, in Louisiana, to sell, transfer, and assign the lease covering all land therein described; and that he had, in fact, accepted the lease as to all the land covered thereby; and that he had waived any defects, if there were any, in the title as to any of the tracts of land mentioned in the lease, and had waived the right to have his attorney pass upon the abstract of title and approve the same; and that appellant never turned down appellee's title to any of the tracts of land covered by the lease, nor objected to nor pointed out any defects thereto until after the market value of such leases had greatly declined; and that he then did so, and acting in bad faith, had his attorney to turn down appellant's title in general terms, without pointing out any specific defect as to any tract covered by the lease, merely for the purpose of relieving himself from a binding contract to pay for such lease; and that appellant was now both estopped and had waived any right that he had under the contract between the parties to question appellee's title to any of the tracts of land covered by the lease. This, in substance, closed the pleadings of the parties.

The case went to trial with a jury, and was submitted upon only two special issues, which were as follows:

Question No. 1: "Did J. B. Bussey exercise acts of ownership over the lease? If so, state how." To this question the jury answered: "Yes; by having the lease recorded and offering same for sale."

Question No. 2: "Did O. R. Davis, after learning of the attorney's opinion as to defects, agree or attempt to make corrections, if any were necessary?" To this question the jury answered: "Yes."

Upon the verdict of the jury as returned, and the findings of the trial court as expressed in the judgment, that appellee had good and perfect title to 598 acres of the land described in the contract of lease, and, upon such further finding by the court as may be involved in the judgment, rendered and entered judgment in favor of appellee for $7,474 of the $10,000 that had been deposited in the defendant bank, and rendered judgment in favor of appellant Bussey for the remainder of that deposit, and Bussey alone has prosecuted this appeal.

The record in this case is very voluminous, and there are some 53 assignments of error brought forward in appellant's brief, under which he presents many propositions as reasons for reversal of the judgment. These assignments and propositions, however, but raise in different form and manner, as we see it, only two legal questions, and we will dispose of all of appellant's contentions by a discussion of these two questions.

[1, 2] Appellant's first contention is, in substance, that the court was in error in overruling his general demurrer and his numerous special exceptions directed against appellee's petition, on the ground that the same constituted an attempt to contradict or vary by parol testimony the contract in writing that appellant contends was made between the parties, and was a complete and entire contract within itself, and in afterwards permitting appellee to introduce parol testimony in line with his pleading. In disposing of this contention, it is sufficient to say that it is manifest, from the written contract of lease and the brief written order that appellant gave to the bank on the same day that the lease was executed, that the writing between the parties was not their full and complete contract regarding the subject-matter thereof. This is not only manifest from the written lease and the written order to the bank, but it is admitted in appellant's answer that nothing was said in the lease or in the written order as to who was to furnish the abstract of title, or when it should be furnished, or what character of title the abstract should show, or as to what time should be allowed appellee to cure defects in title, if any should be specified by appellant's attorney, etc. None of these things were stated in the written lease or in the written order to the bank deposited with the lease. Therefore, the contract not being wholly in writing in the respects as mentioned, it was permissible for appellee to allege and prove so much of the contract touching the subject-matter of the lease as was not provided by that part of the contract that was in writing. As we construe the pleadings and the evidence introduced under it, appellee was not attempting to contradict or vary by parol any part of the written contract between the parties, but was merely attempting to show what the whole contract was, both that part which was written and that part which was oral. We understand it to be the well-settled rule in this state that, where it is shown that only a part of a contract between parties is expressed in writing, and there are other material parts of the contract that rest in parol, it is permissible to allege and prove what part of the contract rests in parol. This does not contradict or vary the terms of a written contract.

It was said in Thomas v. Hammond, 47 Tex. 42:

"Where written instruments form part of a more comprehensive transaction, the terms of which are not attempted to be expressed in writing, parol testimony as to such parts of the transaction as were not reduced to writing is admissible."

And further it was said:

"If the matters alleged are, for the purposes of the given suit, a proper part of the transaction to be investigated, and the law does not directly forbid such matters to be proved by parol, and the parties have instituted written evidence of only parts of the transaction, not including the parts proposed to be proved orally, then the evidence is entitled to be heard."

See, also, Henry v. McCardell, 15 Tex. Civ. App. 497, 40 S. W. 172; Womack v. Wamble, 7 Tex. Civ. App. 273, 27 S. W. 154; Davis v. Sisk, 49 Tex. Civ. App. 193, 108 S. W. 472; Coverdill v. Seymour, 94 Tex. 1, 57 S. W. 37; Horne v. Chatham, 64 Tex. 36; Routh v. Caron, 64 Tex. 289.

The only thing, it seems to us, that the appellee in this case pleaded and introduced parol proof to sustain that was not expressed in the written contract between the parties was the fact (1) that he was to furnish to appellant an abstract of title; and (2) that he was to do this within a reasonable time from the execution of the written contract; and (3) that appellant's attorney should be allowed six days to pass upon the abstract and point out defects in title, if any; and (4) that appellee was to have a reasonable time after such defects, if any, were specified to perfect the title; and (5) that appellee did not contract, as was specially alleged in appellant's answer, to furnish to appellant an abstract showing a merchantable or marketable title, but that the contract was that appellee was to furnish to appellant a good title. Therefore we say that nothing that appellee pleaded and nothing that he was permitted to prove tended in the least to contradict or vary anything that was in the written contract between the parties. This being true, we hold that the court was not in error in overruling appellant's general demurrer or any of his special exceptions, and all assignments and propositions contending otherwise are overruled.

[3] Appellant next contends that the trial court, upon the conclusion of the evidence, should have instructed a verdict in his favor, because, as he contends, the undisputed proof showed that it was the contract and agreement of the parties that appellant should not be obligated to take any tract of land covered by the lease, unless the title thereto was approved by his attorney, and that, since it was shown, as he contends, without dispute that his attorney did not approve the title to any tract of land covered by the lease, the appellee was not entitled to recover any portion of the deposit that was made by appellant in the bank, and the trial court should have so held.

There is a letter in the record that was written by appellant's attorney to him dated April 29, 1920, in which the attorney stated to appellant, in substance, that the abstract before him did not show a commercial or merchantable title in appellee, but he never pointed out a single defect, as we read his opinion, in the title to any tract covered by the lease. The attorney also stated in the letter that the reason he did not point out any defects to appellant was because, as he understood it, appellant did not care to have such defects pointed out. The attorney also stated in the letter that three days' time, which had been allowed him by appellant to pass on the abstract, was not sufficient time to carefully examine the abstract. Under the contract between the parties, appellant's attorney was to have as much as six days' time in which to examine the abstract and point out defects, if any there were. Just why appellant declined to allow his attorney the full six days is not expressly explained by this record. The proof, as we read the record, shows without contradiction that the abstract of title that was prepared and furnished by appellee to appellant was delivered to him on April 12, 1920, and that appellant immediately on its delivery went to Shreveport, La., and attempted to assign or transfer the lease to other parties, and the abstract of title was not delivered by appellant to his attorney until the 26th day of April, 1920. The evidence further shows, as we think without contradiction, that on the 3d day of May, 1920, up to which time no notice had been given to appellee that his title to any tract of land was questioned, appellant called appellee over the telephone, and stated to him that the parties that appellant had expected to assign the lease to had declined to take it, and that he would turn the lease back to appellee. The evidence further shows that appellee then asked that the defects in his title be specified or pointed out, but that appellant declined to have this done, and stated, in substance, to appellee that he did not care and would not then take the lease under any consideration, and he notified the bank accordingly.

[4] If the evidence in this case was sufficient to warrant a finding by the trial court that appellant had waived his right to have his attorney approve appellee's title, and had intended to accept the lease as given him, and that such intent was shown by his having the same recorded and going into the market to sell it, then we think that it should be held, as pleaded by appellee, that appellant had waived his right under the contract to have the title approved by his attorney, and that, in fact, appellant did not turn down the title in good faith because defective in any respect. We think the evidence in the record was sufficient to warrant such finding by the trial court, and that such finding is involved in the trial court's judgment, since no specific issue to that effect was requested by either party. As we have shown above, the jury found, in answer to special issue No. 1, that appellant did exercise acts of ownership over the lease by having it recorded and attempting to assign and sell it, and in all probability, upon the same evidence as shown by this record, if the jury had been asked the specific question as to whether appellant waived his right under the contract to have the title approved by his attorney, they would have answered the issue in the affirmative. At all events, the pleading having raised the issue, and the evidence as we hold being sufficient to sustain it, a finding by the trial court sustaining the issue is involved in the judgment, under the statutory rule that all issues not submitted or requested to be submitted which are raised by the pleadings and the evidence will be considered to have been found by the trial court in such manner as to sustain the judgment. Article 1985, Revised Statutes.

Appellee has filed two cross-assignments of error, under which he contends that the trial court should have found that he had good and perfect title to 707 acres of land covered by the lease, instead of only 598, and should have rendered judgment in his favor for a sum of money in accordance with such finding at the rate of $12.50 per acre. These assignments we overrule, for the reason that the trial court has expressly found that appellee had good title to only 598 acres of the land covered by the lease, and there is not such a statement in appellee's brief touching his counter propositions as to show that the trial court was in error in so finding. The statement of facts in this case is nearly 400 pages thick, and it is too voluminous for us to go through to find whether or not appellee showed title to any more than 598 acres.

It follows from the foregoing conclusions that the judgment ought to be affirmed in toto, and it has been so ordered.

WALKER, J., not sitting.