**LEVY PLUMBING CO. et al. v. STANDARD SANITARY MFG. CO.**

No. 11609.

Court of Civil Appeals of Texas. Dallas.
Dec. 23, 1933.

Rehearing Denied Feb. 3, 1934.

John C. Read and Earl A. Forsythe, both of Dallas, for appellants.

Burgess, Chrestman & Brundidge, and L. E. Elliott, all of Dallas, for appellee.

BOND, Justice.

On December 17, 1931, Levy Plumbing Company and M. W. Levy executed and delivered to the Standard Sanitary Manufacturing Company three promissory notes. At the maturity date of said notes, appellee instituted suit in the Fourteenth district court of Dallas county, against appellants, for the full amount of the notes, with interest and attorney's fee, alleging the aggregate sum to be $8,010.26. Appellant Levy Plumbing Company answered by general and special demurrers, pleaded the general issues, and in a cross-action pleaded that appellee, maliciously and without cause, sued out various garnishment writs against debtors of said appellant, for the purpose of harrassing and injuring its credit rating, and on account of which said appellant is damaged in the sum of $20,000. Appellant M. W. Levy filed a similar answer, and, in addition, pleaded that he was merely an accommodation maker of said notes; that he signed them in consideration of appellee advising the wholesale jobbers in the Dallas territory that the credit of the Levy Plumbing Company was good, that its credit rating was unimpaired, and further alleged that appellee agreed to sell Levy Plumbing Company merchandise on credit, and that, before the maturity of said notes, appellee breached its said agreement, refusing to commend to the wholesale jobbers, as good, the standing and credit rating of the Levy Plumbing Company, and refused to sell to it merchandise on credit.

On March 2, 1933, while the case was on trial, the parties to the suit, in open court, entered into the following stipulated compromise agreement:

"It is stipulated and agreed by plaintiff and defendant in the above styled and numbered cause as follows:

"That both parties to the suit here and now waive trial by jury.

"That the amount of principal due on the notes sued upon is $7,066.66; that the interest due on said notes to this date is $215.40; total principal and interest $7,282.06, which, with ten per cent attorney's fees, amounts to $8,010.26.

"It has been agreed that, if within ten days proper title is shown in the property located at Ervay and Santa Fe Streets in the City of Dallas, is clear of lien and title

shown in M. W. Levy, and proper papers are executed by proper parties, the following settlement may be made, to-wit:

"That defendants pay $1,750.00 in cash, $500.00 thereof being attorneys fees, and the balance to apply upon the principal and interest of $7,282.06; the defendants are to execute an installment note payable to plaintiff in the sum of $6,032.06, providing for six per cent interest thereon and payable in twelve monthly installments, the first eleven of which shall be for $300.00 and the twelfth installment shall be in the sum of $2,732.06; that said note shall provide for accelerated maturity clause, and ten per cent attorney's fees in the event suit is filed thereon; said note is to be signed by both defendants and secured by deed of trust lien against the property above mentioned; the costs are to be paid by the defendants in the main case, and in addition take care of garnishee's fees for the General Plumbing & Supply Company and ———— garnishees in those two suits, all other costs and garnishee's fees to be paid by the plaintiff.

"Upon the execution of said notes and compliance with the terms of this agreement by the defendants all suits, the main suit and the garnishment suits, are to be dismissed.

"Should the defendants fail to comply with the terms of this agreement within ten days from this date, all cross-actions are waived by defendants and they agree that the court may then enter judgment in favor of plaintiff for the above amounts of principal and interest and ten per cent attorney's fees, totalling $8,010.26.

"It is additionally understood that the installment note shall provide for payment on or before maturity and that at any time within ten days before the execution of such note, the defendants may also have the option of paying the cash to the plaintiff in the amounts provided in the notes sued on, and the cash to be paid by this agreement.

"This case may be passed for ten days in accordance with this stipulation. The abstracts are to be furnished at once by the defendants, and the plaintiff agrees to have same examined within sufficient time to give the defendants time within said ten days in which to remove or cure any errors or objections and execute the papers herein provided for."

Appellants having failed to comply with the terms of the agreement, said district court, on March 31, 1933, entered judgment in favor of appellee for the sum of $7,066.66, with interest and attorney's fees aggregating the sum of $8,029.25, together with interest thereon at the rate of 6 per cent., and for all costs of suit.

In due time appellants presented their motion for a new trial, contending that they entered into the stipulated agreement without knowledge of an impending moratorium, or bank holiday; and that the financial stringency and depression within this state and nation rendered them unable to comply with their stipulated agreement. Appellants further contend that the judgment entered into was without notice, thus depriving them of the right to be heard and protest its entry. The motion for a new trial was overruled. Appellants appealed.

██ The appeal is predicated upon the sole proposition that the stipulated agreement is nonenforceable against appellants, because of the great national calamity, financial economy and depression, resulting in bank moratorium proclamations being issued by the President of our nation and the Governor of our state, closing banks and rendering all securities for loans unavailing; in consequence of which appellants were unable to secure the necessary money to carry out the stipulations in the agreement; thus their agreement was impossible of performance. We concede, under the existence of some character of an emergency, the Legislature of the state may enact a law to postpone or delay, for a limited period of time, the procedure for the enforcement of the terms of a contract, but the determination of such an emergency rests primarily with the Legislature. The aid of courts, in the absence of legislative grant, cannot be interposed to delay the enforcement, or to declare a judicial moratorium against the enforcement of a contract solemnly made by the contracting parties. The contracting parties are presumed to know the extent to which they bind themselves, and, where the contract is unqualified, or one not based upon the continued existence of a contract, hard times, panic, depression, or other named financial stringencies are not recognized by law as a ground to impair or abrogate the rights imposed by a contract, or to authorize the courts to declare a moratorium by judicial decisions.

██ Reviewing the stipulated agreement, appellants obligated themselves to pay in cash $1,750, execute notes for a stipulated amount, and, in default thereof, after ten days, to suffer judgment to be entered against them. The record reveals, and it is of passing historical occurrence, of which courts

take judicial knowledge, that at and prior to the date of the agreement a financial stringency existed in the nation and state; that proclamations of the chief ·executives of the nation and many of the states of the union were made, closing banking institutions, and that the banks in Texas were closed from March 2, 1933, to March 13, 1933; thus, if the closing of the banks was the incipient cause of appellants' inability to pay the $1,-750 in cash within the time specified in the agreement, evidently the closing did not affect the ultimate payment after their reopening. The financial depression and the banks' aptitude for refusing loans on real estate and other securities after their reopening may have been, and possibly was, the inductive cause of appellants' financial inability to meet their obligation; however, appellants were either fully cognizant of this general financial depression or at least chargeable with knowledge of it at the time the agreement was made. The contract bears no stipulation relieving appellants, under such circumstances, from a performance of their agreement, and we cannot impose the condition as a precedent to nullify the contract which the contracting parties themselves did not make. It must be presumed that appellants would not have assumed the obligation to pay in cash, if they were not able to perform same, but, if they did so, whether such inability existed at the time of the execution of the agreement, or arose subsequently and they defaulted in the payment, they must suffer the consequences of their own act and allow the judgment to be entered, as agreed. It is the general rule that, "If the agreement to perform is absolute, impossibility of performance arising after the contract is made is not an excuse for non-performance where it might reasonably have been anticipated or foreseen and guarded against in the contract, even though it results from * * * some circumstance over which the parties have no control." 10 Tex. Jur. 434. If the contract could reasonably be interpreted as being based upon the continued existence of the subject-matter, the subsequent cessation of existence will excuse the performance. In such cases, however, it is necessary that the condition be the basis and foundation of the contract. The impossibility to perform a contract, due to the nature of the thing contracted, and the incapacity of the person who has promised to perform, to carry out the terms of the agreement, is a potent distinction. Appellants' position in this case is that they were incapable of raising the money, because of the financial stringency of the banks, thus unable to perform the agreement within the time specified, and not that the contract was impossible of performance. The contract, in its alternative covenant, providing that appellants waive all defenses, cross-actions, and that the court before whom the agreement was made could enter an agreed judgment, is evidently founded on the theory of a contingency couched in language to safeguard appellee in case of a failure to perform. In our opinion, the agreement cannot be construed as a conditional one, contingent upon appellants being able to borrow the money. Appellee had the right to declare a forfeiture and to reap whatever benefits the agreement afforded.

We conclude that the trial court did·not err in entering the judgment in pursuance to the agreement of the parties, and did not abuse the right of discretion in overruling appellants' motion for a new trial. Judgment of the lower court is affirmed.

Affirmed.