## OWENS v. DALLAS BANK & TRUST CO.
### No. 11718.

Court of Civil Appeals of Texas. Dallas. Jan. 6, 1934.

Rehearing Denied Feb. 3, 1934.

W. B. Harrell, of Dallas, for appellant.

McBride, O'Donnell & Hamilton, of Dallas, for appellee.

BOND, Justice.

This is an appeal from an order of a district court of Dallas county dissolving a temporary injunction theretofore granted by said

court restraining appellee, Dallas Bank & Trust Company, from selling property placed with it as collateral to secure an indebtedness due by appellant, J. T. Owens.

Appellee's motion to dissolve consists only of a general demurrer and general denial, and the order of the court is predicated upon sustaining the demurrer to appellant's petition, appellant declining to amend. Pending this appeal, the order dissolving the injunction was suspended and the restraining order continued in force.

Appellant in substance alleged that, in 1931, he was indebted to the First National Bank in St. Louis, Mo., in the sum of $20,000, and had pledged with it as collateral security a number of shares of the capital stock of the Republic National Bank & Trust Company of Dallas; that, prior to its maturity, he caused the indebtedness and securities to be transferred to appellee bank, and on April 1, 1931, in lieu thereof and for an additional loan, executed and delivered to appellee a note in the sum of $22,500 and a collateral agreement, authorizing said bank, in case of default, to sell, at private or public sale, the shares of capital stock assigned to it, and apply the proceeds to the payment of said note; that said note was renewed at different times, some payments being made, interest paid, and, at the request of appellee, additional security of 200 shares of the capital stock of the First National Bank in Dallas were pledged to appellee.

Appellant further alleges that, on August 16, 1933, he paid $7,000, together with the accumulated interest, and executed a renewal note to said bank in the sum of $15,500, the balance of the original indebtedness, and executed and delivered to appellee a renewal collateral agreement, empowering said bank, as in the original agreement, to sell, in the event of appellant's failure to pay the note, all of the securities placed with it, and make proper application of the proceeds. The renewal note matured September 15, 1933. Appellee demanded payment in full, refused offers of renewal and extension, and declared a default, and is now threatening to place the note and the stock securities in the hands of an attorney for collection and sell the securities in pursuance of the agreement and apply the proceeds to the payment of said note.

Appellant further alleges that, at the time he caused the transfer of said indebtedness to be made from the St. Louis bank, pledging the capital stocks and executing the collateral agreement, it was within the contemplation of the parties that the indebtedness would be renewed and extended; that, in the event payment was not made and a sale of the securities become necessary, the market value of such securities would control and the note credited with the prevailing market price for such property, and that the action of the bank, in declaring a default in the agreement, proposing to sell the 650 shares of capital stock, under the present banking condition, and, in a sacrificial stock market, far below its intrinsic value, would amount to a capricious conversion or confiscation of his property, and add embarrassment and inevitable financial ruin to appellant.

Appellant further alleges that there is no market for the sale of stock, due to the national emergency and depression causing the disorganization of industry and affecting the public welfare to such an extent that the President of the United States and various industries and organizations, including banks, have adopted codes in an effort to restore normal conditions and rehabilitate the country; thus, in keeping with this program, appellee has indorsed the National Industrial Recovery Act (48 Stat. 195), become a member of the national recovery endeavorers, thereby entering into an agreement with the President of the United States and other banks, industries, and organizations generally, to do its part in restoring normal conditions. Therefore, to permit appellee to enforce the agreement under such financial depression would be an open, flagrant, arbitrary assault upon the premises of the national program and very injurious to appellant's rights; that he has no adequate remedy at law, and, unless appellee is restrained from selling the securities, it will be sold at whatever price appellee may see fit to accept, and, though it will be done according to the words and meaning of the collateral agreement, it will not be in keeping with the intent and purpose of it; that, at the time the agreement was made, it was within the contemplation of the parties that, in the event of nonpayment of the note, the stock would be sold for market value, and, on account of the changed financial condition, no market value exists; therefore, under such a situation, if sale is made, it should not be sold for less than its true value, or appellant's indebtedness be credited with such value, as the trial of the issue may determine.

Reviewing appellant's petition, giving to it the full force of the law, that the allegations are presumed to be true, and every reasonable intendment is indulged in their favor,

we must arrive at the conclusion that appellant seeks the aid of the court to change the plain and unambiguous words and reading of a written agreement, entered into when conditions were favorable of performance, to meet a changed condition, due to a financial stringency, not within the contemplation of the parties, and to hold in abeyance the performance of a contract until the subsequent cessation of the existence of such stringency. This the courts cannot do. The alleged collateral agreement bears no stipulation that the stock certificates should only be sold at market value or that certificates be not sold or be taken by appellee at their true value. The contract is unconditional. Courts cannot make contracts for individuals, or intervene and set aside a contract made by the contracting parties, or restrain the parties in the exercise of their legal right in undertaking to carry out the plain and unambiguous terms of their agreement. The alleged contract gives the bank the right, in default of payment of a subsisting indebtedness, to sell the shares of bank stock, at private or public sale, and apply the proceeds of sale to the payment of the note. Appellant defaulted in the payment. Thus the courts cannot enjoin the exercise of the rights granted to appellee, on account of an impending national financial crisis. The crisis may furnish the ground for legislative action, but afford no basis for the court's interference with contractual obligations.

The fact that the bank joined with other industries and organizations with the President of the nation in an effort to restore the country to normal conditions, voluntarily closing its doors, prohibiting and limiting the withdrawals of money by depositors and joining the National Recovery Program, could not give rise for a court to declare a judicial moratorium against the enforcement of an agreement solemnly made by the contracting parties. "The contracting parties are presumed to know the extent to which they bind themselves, and where the contract is unqualified, or one not based upon the continued existence of a contract, hard times, panic, depression, or other named financial stringencies are not recognized by law as a ground to impair or abrogate the rights imposed by a contract, or to authorize the courts to declare a moratorium by judicial decisions." Levy Plumbing Co. et al. v. Standard Sanitary Mfg. Co., 68 S.W.(2d) 273 (opinion by this court).

In our opinion, the allegations of appellant's petition fail to disclose a contingency, or a legislative grant, such as would have authorized the court to enjoin appellee in the exercise of its contractual rights. It is, however, within the power of the Legislature, reviewing the impending national financial stringency, to postpone for a limited period of time a remedy for the enforcement of an obligation to pay money vouchsafing the rights of the contracting parties. Lingo Lbr. Co. v. Hayes (Tex. Civ. App.) 64 S.W.(2d) 835. But, as here, in the absence of legislative grant, courts cannot interpose or delay the enforcement of the alleged contract, and it is not within the pale of law to abridge or impair the obligations entered into by the contracting parties.

We conclude that appellant's petition discloses that appellee had a right to declare a default and to pursue the course of enforcing the agreement, and that the petition is subject to a general demurrer, and the trial court did not err in dissolving the injunction. Judgment of the lower court is affirmed, and the order suspending the order of dissolution pending the appeal is set aside.

Affirmed.