## STONE v. WATT et al.
### No. 1500.

Court of Civil Appeals of Texas. Eastland.
March 8, 1935.

Rehearing Denied April 5, 1935.

Lyle Saxon, J. E. Newberry, and J. E. Burkholder, all of Dallas, for appellant.

Seay, Malone & Lipscomb, of Dallas, for appellees.

LESLIE, Justice.

The object of this proceeding was to enjoin the defendants and appellees, Southland Life Insurance Company and W. F. Watt, substitute trustee, from selling the property of the appellant at trustee's sale on Tuesday, January 1, 1935, or any other day thereafter, until further orders of the district court. Without a hearing, the trial judge, on November 30, 1934, granted to the appellant, Dr. Marvin P. Stone, a temporary restraining order which was to expire December 10, 1934, but was by agreement continued in force until December 13, 1934, when it expired by its

own terms. A hearing on the last date resulted in an order refusing to grant a temporary injunction. The court did, however, attempt to keep the temporary restraining order in force pending the disposition of this appeal, and that order has been respected by the appellees. The relator, Stone, appeals, assigning various errors to the above action of the trial court.

In substance, the material facts involved in the litigation are as follows: On January 31, 1927, the appellant, Stone, purchased from Harold C. Sparkman, a single man, lot 13, and the east 15 feet of lot 14 in block 9, of the Belmont addition to the city of Dallas. The property was then subject to a lien of $8,500, of date February 25, 1925, executed by Thomas E. Bowers and wife to T. L. Camp, trustee. The appellant paid, and contracted to pay, $22,500 for the property, a part of the consideration being the assumption of the $8,500. All the consideration, some of it the assumption of second lien notes, and the balance cash, has been paid by the appellant except the $8,500 note, which was sold and transferred by Alex Camp, the owner, to the American Life Reinsurance Company, which later changed its name to the American Life Insurance Company, which sold and transferred the note and lien to the Southland Life Insurance Company, an appellee herein.

The original note was dated February 25, 1925, and payable to the order of Alex Camp January 1, 1930. By written extension agreement, of date February 8, 1930 (filed for record February 18, 1930), and executed by appellant Stone, said note and lien were extended to mature in three installments as follows: $250 January 1, 1933, $250 due January 1, 1934, and $8,000 to become due January 1, 1935. A notice of trustee's sale under the original deed of trust was posted for December 4, 1934. The sale was not consummated, and the property was again posted for sale January 1, 1935. The appellant failed to meet the terms of the extension agreement and thereby became delinquent. The situation thus created, and Stone's omission to apply the revenues derived from the rent of the residence to the payment of taxes and interest, apparently provoked the foreclosure proceeding now sought to be enjoined. The note bears 6½ per cent. interest per annum, and there is no question of usury involved in this suit.

The injunctive relief is sought upon the following grounds:

(1) That appellant is unable to pay the debt; that the property securing the same is "well worth" the $8,500 against it; and that he had tendered the same to the insurance company as a satisfaction in full of the indebtedness.

(2) That the original note stipulated for the payment of same "in gold coin of the United States of America of the present weight and fineness with exchange on New York." "That appellee * * * failed to elect before posting the property for sale whether it would accept United States currency or insist upon payment of the mortgage in gold and that the contract would be impossible of performance, if it had to be paid in gold, owing to the President's proclamation * * *" concerning the gold contents of the dollar, etc.

(3) That, owing to the depressed conditions of the country, the decreased value of real estate and "the fact that the moratorium law of the State of Texas had been held unconstitutional" it "would be unjust and not according to equity" to permit the insurance company to sell the property and secure a "deficiency judgment under the circumstances." That it is now the duty of the courts, and especially the judges of the district courts of the state under the equity powers vested in them by the Constitution and laws of the state of Texas, to exercise the powers of chancery, and grant to appellant the relief for which he prays.

(4) That before a substitute trustee could be appointed and make sale of the property, the original trustee should resign and place his resignation of record, and the substitute trustee should also place his appointment of record. That the failure to place both the resignation of the original trustee and the appointment of the substitute trustee of record before the sale was fatal.

(5) That the substitute trustee was attempting to sell the property under the original deed of trust dated February 25, 1925. That the $8,500 note secured by it became due February 25, 1930, and was barred by limitation four years thereafter. That if the substitute trustee was authorized, in any event, to sell the property under the deed of trust, he should have placed in his posting notice some reference to said extension agreement.

There is no validity in the contention that the holder of the note and mortgage was under the necessity of electing, prior to declaring the indebtedness due and posting the property for sale, whether he would insist on payment of the obligation in gold, or other lawful currency. The provision for the payment in gold certainly did not release the appellant from the payment of the debt in

other lawful currency. While testifying, he admitted the mortgagee had never demanded payment in gold, but had without hesitation accepted payments in lawful money, even without question, the appellant's personal checks. Further, appellant does not appear to be in court endeavoring to meet his obligation by tendering payment "dollar for dollar, in any coin or currency which at the time of payment is legal tender for public and private debts." Section 463, title 31 USCA. The record indicates affirmatively that the appellee has at all times, in the knowledge of appellant, been willing to accept payment of his debt in any lawful currency.

The appellant's second proposition seems to proceed upon the theory that the $8,500 note dated February 25, 1925, due January 1, 1930, thereafter became barred by the statutes of limitation on January 1, 1934, and that these foreclosure proceedings were based exclusively on the original deeds of trust, as nothing was stated in the notice of sale concerning the extension agreement. In other words, it is the appellant's contention that since the appellee's note and original deed of trust were dated February 25, 1925, and the indebtedness extended February 8, 1930, the appellee, as the holder of the note and lien, was without the right to post the property for sale under the deed of trust, but was required to bring suit on the extension agreement, secure a judgment for debt and foreclosure and sell the property thereunder; or, in the event the property be posted for sale under the deed of trust, extended by an extension agreement, the holder of the note must rely upon the extension agreement and specifically post the property accordingly, otherwise the posting would be fatal and the sale thereunder void. Upon these considerations the injunctive relief is claimed.

The contentions seem to be based upon the appellant's construction of article 5520, as amended by the Acts of the 42d Leg. p. 230, c. 136, § 2 (Vernon's Ann. Civ. St. art. 5520). We are unable to find anything in the statute as amended, or the record before us, establishing or supporting either phase of this contention.

The extension agreement entered into before limitation had run provides, among other things, "* * * that said note * * * and the aforesaid deed of trust securing same shall from this date have the same force and effect, and be subject and liable to such and all the covenants and obligations, terms and provisions, and conditions thereof in like manner as they would have had if said note had

been originally payable at the dates to which it is hereby extended, with interest as above specified, and had been so described in said deed of trust."

The effect of this agreement must be determined in the light of said statute as amended, that being the only statute in this state fixing the period of limitation for the exercise of a power of sale under deed of trust. It is there provided that the power of sale shall cease to exist after four years from maturity date of debt "* * * unless the same is extended by an agreement in writing by the party or parties primarily liable for the payment of the indebtedness, as provided by law. The lien created by deeds of trust * * * may be extended by an agreement in writing by the party or parties primarily liable for the payment of such indebtedness. * * *" The extension agreement in the instant case evidences exact compliance with this statute. It not only fixes the period of limitation, but it makes the simple provision that such limitation period does not apply to deeds of trust when the maturity date of the debt has been extended by those primarily liable.

Article 5522, Vernon's Ann. Civ. Statutes, pertaining to the continuance in force of liens securing purchase money, or mortgage lien notes relating to real estate, provides that "* *. * the lien shall continue and be in force until four years after maturity of the notes as provided in such extension, the same as in the original contract and the lien shall so continue for any succeeding or additional extension so made and recorded."

These statutes reflect the legislative intent to give those primarily liable the power to completely extend the debt and lien incident thereto. It is elementary that if the date of the maturity of the debt has been extended, the period of limitation in which the property may be sold is also extended. 29 Tex. Jur., p. 966.

In Farmers' Life Ins. Co. v. Wolters (Tex. Com. App.) 10 S.W.(2d) 698, 704, it is held: "As between the parties, the lien being an incident to the debt and the debt having been by them extended, the lien was by implication of law likewise extended, and, the trustee's sale being within the time thus extended, the judgment of the trial court, permitting the recovery of the land, was proper."

There is no necessity for resorting to implications of law concerning the extension of the deed of trust lien in the instant case. The agreement itself made that point certain, and the sale is not precluded by limitation.

The posted notice of the sale is not subject to the criticism urged against it by the appellant. For its authority, it rested expressly upon the terms of the deed of trust by which the appellant bound himself originally, and later rebound himself under the agreement for the extension. It set forth, among other things, the authority for the sale, time and place thereof, the description of the property, and was otherwise sufficiently comprehensive and specific to notify the public of the sale and to attract bidders at the specified time. It meets all requirements of article 3810, Vernon's Ann. Civ. St. covering notice of trustee's sale. Mortimer v. Williams (Tex. Civ. App.) 262 S. W. 123. It was sufficient under the authorities generally. 41 C. J. p. 949, 953.

Further, the property was posted for sale December 4, 1934, and later for sale January 1, 1935. Therefore, the questions involving notices become moot, since future sales cannot be predicated upon either of these notices.

There is no merit in the appellant's third contention that he is entitled to the injunction on the ground that it was the duty of the holder of the mortgage paper to place the resignation of the original trustee, and the appointment of the substitute trustee of record in the county clerk's office in the county where the property is situated, prior to the posting of the property for sale. The contention is answered in the negative by the opinion in Browne v. Investors' Syndicate (Tex. Civ. App.) 60 S.W.(2d) 1047.

In response to the appellant's fourth proposition, we conclude that the equity powers of the district courts of Texas do not extend to or authorize them to create debt moratoria by reason of conditions of depression, shrinkage in values of real estate, etc., alleged. We find no authority that would warrant a court of equity in this state to interpose its aid by declaring a moratorium against the enforcement of the terms of a solemn contract, voluntarily entered into by competent parties who are presumed to know the extent to which they bind themselves. Levy Plumbing Co. v. Standard Sanitary Mfg. Co. (Tex. Civ. App.) 68 S.W.(2d) 273 (writ refused). Owens v. Dallas Bank & Trust Co. (Tex. Civ. App.) 68 S.W.(2d) 275. First State Bank of Roby v. Hilbun (Tex. Civ. App.) 61 S.W.(2d) 521.

Further, it has been recently held in an able opinion by our Supreme Court, through Chief Justice Cureton, that the law making authorities of this state have not the power, under our Constitution, to enact moratorium statutes under the conditions alleged. Travelers' Ins. Co. v. Marshall (Tex. Sup.) 76 S.W.(2d) 1007. If that authority is without constitutional power to enact such statutory remedies, it follows that a court of equity may not grant such relief.

Further, the right of the appellant to deed the property securing the debt to the appellee in settlement thereof cannot be sustained. The contract provided for payment in money and its terms cannot be altered by a court of equity so as to make it payable in real estate. Neither the Legislature nor the courts may thus impair the obligations of contract. Langever v. Miller (Tex. Sup.) 76 S.W.(2d) 1025; Travelers' Ins. Co. v. Marshall, supra.

For the reasons assigned, the judgment of the trial court is affirmed. It is so ordered.