ELLWOOD et al. v. NUTEX OIL CO.
No. 4042.

Court of Civil Appeals of Texas. El Paso.

Feb. 13, 1941.

Rehearing Denied March 13, 1941.

Fouts, Amerman & Moore, of Houston, and Hal Browne, of San Antonio, for appellants.

Robert H. Rice and Rice & Rice, all of San Antonio, for appellee.

SUTTON, Justice.

This is an appeal from the 73rd District Court of Bexar County. The parties will be designated here as in the trial court.

The plaintiffs, D. C. Ellwood and H. W. Young, sued the defendant, Nutex Oil Company, on a written contract to recover the sum of $15,000 they claimed to be due them as damages as a result of the failure of the defendant to comply with the terms of the contract. The trial was to the court without a jury, and at the conclusion of the testimony the court, without hearing argument, rendered judgment in favor of the defendant, stating "the contract is not susceptible of the plaintiffs' theory of this case." From that judgment the plaintiffs have perfected this appeal.

The correctness or incorrectness of the trial court's construction of the contract is the principal question to be determined on this appeal.

The contract recited the plaintiffs desired to make investments in the oil business and had at that time advanced certain sums to be so invested; that the defendant was engaged in buying and selling oil and gas leases and the development of them; and that the plaintiffs were to retain an interest in certain oil and gas leases thereinafter described on certain properties in Victoria County. Then follows a description of the three leases, which we omit, but we copy the pertinent portions of the contract, as follows:

"It is agreed that in consideration of said funds so furnished by parties of the first part, and such assistance in financing, as hereinabove set out, that party of the second part will purchase said leases hereinabove described, and parties of the first part are to receive therefor an undivided twenty-five (25%) per cent interest in and to said leases so described.

"In the event said parties of the first part shall give party of the second part thirty (30) days' notice advising said party of the second part that they desire sufficient acreage sold out of said tracts to reimburse the said parties of the first part for the amount of money which they have invested therein, said party of the second part agrees and contracts to bring buyer for the purchase of a sufficient amount of said acreage to return to parties of the first part their original investment.

"In the event that parties of the first part, after having been consulted with reference to the sale price of such acreage, can not and do not agree upon the sale price of such acreage, then both parties herein covenant and agree that party of the second part will set aside, convey and transfer to parties of the first part such amount of acreage as will equal the undivided one-quarter (1/4) interest in said tracts.

"In the event division thereof can not be agreed upon by the parties thereto, then and in such event, each of said parties shall select one arbitrator and the two so selected shall select one other (all of whom shall be experienced oil operators) and said three arbitrators shall divide said tracts and apportion to said parties of the first part such an amount of acreage as would equitably constitute such parties of the first part's undivided one-fourth interest.

"It is agreed that after such partition is made by such arbitrators, that each of the parties hereto shall execute the necessary transfers and assignments to vest title in the respective parties of such acreage so partitioned."

It is apparent the plaintiffs were to have and receive an undivided 25% interest in the three leases; that on thirty days notice to the defendant it would bring a buyer for a sufficient amount of the acreage to return to plaintiffs their money; that if the plaintiffs were not satisfied with the price obtainable for the acreage thus offered they had the right to refuse it and have their undivided twenty-five per cent segregated and set aside to them, and if the parties were unable to agree upon the partition and the acreage to be set aside, then resort should be had to arbitration.

To us the contract is plain and unambiguous.

The evidence discloses the defendant believed it had made a rich oil discovery in lands in close proximity to these three leases; that their values would be greatly enhanced by the bringing in of the well it was drilling, and the only opportunity to obtain the leases at a price attractive to them was then; that the defendant had no money to invest in them. We think it easily inferable that the defendant offered the promise to sell the acreage and reimburse plaintiffs as an inducement to put up the money while the opportunity was open to them and when the leases might be had at a price that would enable all of them to reap large profits.

It is undisputed that the plaintiffs furnished the $15,000, and that the money went into the purchase of the leases. It is also admitted the plaintiffs made the written demand on the defendant to sell a sufficient amount of the acreage to fully reimburse them. The evidence fails to show that at any time after the demand was made the defendant produced a buyer for any part of the acreage at any price. This was necessary to put the plaintiffs to a choice as to whether they would accept the offer and sell, or partition their interest out. Mr. Camp did testify he advised the plaintiffs the leases could be sold for whatever they were then worth, possibly $7,500, and as he put it, "a half loaf is better than no loaf at all," and the plaintiffs insisted on a sale for the full amount of $15,000. Mr. Camp's testimony is that the conversations occurred before the demand and not afterwards. As we understand the record, there was no effort made to sell any part or the whole of the leases after the demand. Mr. Camp took the position in his testimony there was no use, because the leases were generally believed to be and conceded to be condemned and of no substantial value.

The defendant seeks to avoid liability on the contract on three grounds: (1) That the contract cannot be construed as a promise to pay money; (2) if it may be, then it is ambiguous, and, taking into consideration the situation of the parties, it was plainly not the intention of the parties to so contract; and (3) that the plaintiffs, being unwilling to accept the price at which the leases could have been sold, were entitled only to a separation of their interest.

We think the plain language of the contract made it the duty of the defendant to produce a buyer, on thirty days notice, for a sufficient amount of the acreage to reimburse the plaintiffs for the amount of

money furnished by them. If it failed, and the evidence without dispute shows it did, then the only question is whether or not it is liable in damages for its failure. The defendant in its brief on this appeal has undertaken to defend itself against the assaults of the plaintiffs and to uphold the construction of the contract and judgment of the trial court on the three grounds stated above. It has not undertaken to show why it could not and should not be held to respond in damages to the plaintiffs. We know of no reason in law why this provision of the contract cannot and should not be enforced.

What we have already said disposes of the second proposition asserted by the defendant. To us the contract is plain and unambiguous and requires no resort to evidence outside the contract for a proper construction of it.

A partition of the leases was at the option of the plaintiffs. The contract provides that on thirty days notice and demand the defendant will produce a buyer for a sufficient amount of the acreage to reimburse them for the amount contributed. Then follows the provision that if they are unwilling to accept the price and sell, they shall have their interest set apart to them. The defendant cannot resort to this provision until it has produced a buyer for a sufficient amount of the acreage to repay the plaintiffs and their failure to accept the price. Had the Company produced a buyer for, say, $7,500, and the plaintiffs refused to permit it to sell at such a price, it might have a different situation, but that did not occur.

The plaintiffs complain that the defendant bought leases that were encumbered. That is not open to them, because the leases to be bought were specifically mentioned and they had to take notice of their condition and encumbrances. They also complain that the defendant sold portions of the leases and placed itself in a position where it could not sell a sufficient amount of the acreage to comply with its obligation. That may or may not be true. The evidence does not disclose that as the reason or a reason for its failure. The record indicates, if it does not make plain, that the real reason was because the area had been condemned and the leases rendered practically worthless, as a result of which no real effort was made to sell them. But under our interpretation of the contract, it does not matter why the failure of the defendant, the mere fact that it did fail to produce the buyer for the acreage is sufficient to render it liable. It might have relieved itself in part had it produced a buyer at a less sum and shown a refusal by the plaintiffs to agree; but that it has not done.

■■■ The defendant has raised no defense of illegality in its brief, nor of impossibility of performance because of the condemnation of the area and of the three leases, though Mr. Camp in his testimony offered such as an excuse for the failure to sell. But, if urged, such defenses could not be available to it, because there is nothing illegal in the contract, and the obligation is unconditional and absolute. The Company must be held to have assumed the risk of its inability to produce a buyer for a sufficient amount of the acreage to reimburse the plaintiffs, as provided in the contract. We think this case falls within the general rules applicable to contracts, that one who unconditionally obligates himself to do a thing possible of performance, must be held to perform it (Kingsville Cotton Oil Co. v. Dallas Waste Mills, Tex.Civ.App., 210 S.W. 832; Masterson v. Amarillo Oil Co., Tex.Civ.App., 253 S.W. 908, writ refused); and though performance, subsequent to the contract, may become difficult or even impossible, does not relieve the promisor, and particularly where he might have foreseen the difficulty and impossibility. Levy Plumbing Co. v. Standard Sanitary Mfg. Co., Tex.Civ.App., 68 S.W. 2d 273, writ refused; Embry v. Lewis, Tex.Civ.App., 19 S.W.2d 87.

We think it unnecessary to discuss the other questions raised by plaintiffs in their brief.

From what has been said on our construction of the contract it follows that the case must be reversed. The case has been fully developed and there is no occasion to remand it. The judgment of the trial court is, therefore, reversed, and judgment is here rendered for the plaintiffs for the sum of $15,000, with interest from the date the suit was filed at the rate of six per cent per annum, and costs.